**BANCO NACIONAL DE NICARAGUA,**
**Plaintiff-Appellant,**

v.

**ARGONAUT INSURANCE COMPANY,**
**Defendant-Appellee.**

No. 80–5122.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1982.

As Modified on Denial of Rehearing
Oct. 12, 1982.

Harvey M. Goldstein, Caron Balkany Goldstein, Miami, Fla., for plaintiff-appellant.

Reginald Hayden, Jr., Miami, Fla., for defendant-appellee.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This litigation concerns the fate of a cargo of urea shipped from Romania to Nicaragua in 1974. The owner of the urea, appellant Banco Nacional De Nicaragua ("Banco Nacional"), filed suit against the insurer of the cargo, appellee Argonaut Insurance Company ("Argonaut"), alleging that a large quantity of the urea had been lost or damaged on the voyage or during the unloading of the vessel. Argonaut disagreed, arguing at trial that no loss had occurred or, alternatively, that any loss occurred after the period of coverage had ended. Siding with Argonaut, the jury to which the case was tried returned a defense verdict. The district judge entered judgment accordingly.

Banco Nacional appeals, raising three points of error. First, Banco Nacional argues that the district judge, in his instruction to the jury, erroneously placed upon Banco Nacional the burden of proving that the alleged loss of urea occurred within the policy period. Second, appellant argues that there is insufficient evidence to support the jury verdict, and therefore Banco Nacional is entitled to either a judgment notwithstanding the verdict or a new trial. Third, Banco Nacional raises an evidentiary point. We find no reversible error in the proceedings below and therefore affirm the judgment of the district court.

## I. FACTS

The M/V JAGAT PADMINI set sail from Constanza, Romania, on October 4, 1974, carrying Banco Nacional's cargo of 12,500 metric tons of urea packaged in 250,000 50-kilogram bags. The urea was in good condition when the voyage began, and the vessel issued a clean bill of lading. The JAGAT PADMINI encountered rough seas on the voyage, and the captain of the vessel filed a notice of protest because of the bad weather. The ship arrived in Porto Somoza, Nicaragua, on October 28, 1974, and unloading commenced on October 30, 1974.

There is no dispute that many of the bags containing urea were torn or broken on the voyage. As a large quantity of urea was loose in the hold, the process of unloading the ship was somewhat more difficult than in the normal case. The unloading of the vessel was completed on November 28, 1974.

There is considerable dispute regarding the quantity of urea unloaded at port. Customs documents indicate that over 192,000 bags were received in good condition, the equivalent of 18,000 bags were received in

bulk, 27,000 bags were received damaged, and 12,921 bags were missing. Argonaut challenged the accuracy of these records at trial. More specifically, it argued that some urea was placed in the warehouse at Porto Somoza without first being weighed, and therefore the Customs figures for bulk urea understated the actual amount of urea unloaded. On this issue, the evidence was mixed. Regarding the cause of the alleged loss of urea, Banco Nacional produced several theories to explain the loss, but no substantial proof regarding what caused the alleged losses was adduced at trial.

The all-risks insurance policy written by Argonaut covered Banco Nacional against all risks of physical harm to its cargo of urea caused by any external force, subject to certain exceptions. The policy contained a "warehouse-to-warehouse" clause. Under this clause, the policy coverage extended from the time the urea left the warehouse in Romania until it was discharged from the vessel at Porto Somoza, Nicaragua.

Sometime after the unloading, Banco Nacional filed a claim with Argonaut for the alleged losses of urea. Argonaut, after investigating the claim, denied that a loss occurred and refused to make payment on the claim. Banco Nacional then filed suit.

## II.  BURDEN OF PROOF

Banco Nacional argues that the district court's instruction to the jury improperly placed upon Banco Nacional the burden of proving that the alleged loss of urea occurred within the period that the policy was in force.[1]  Argonaut argues that this burden is properly part of the insured's prima facie case of proving a loss. Both parties base their arguments on the decision of the former Fifth Circuit[2] in *Morrison Grain Company, Inc. v. Utica Mutual Insurance Company*, 632 F.2d 424 (5th Cir. 1980).[3]  We agree with Argonaut that the jury instructions were proper under *Morrison. Morrison* involved a claim under an all-risks marine insurance policy with respect to urea lost during shipment from Romania to Mississippi. A large quantity of that urea had dissolved during the voyage,[4] and urea was also lost or damaged at sea or on discharge due to breakage of the container bags. Morrison, the insured, recovered at trial, and the insurer appealed, claiming that Morrison should have had the burden of proving that the loss was not caused by an inherent vice or defect (*i.e.*, defective packaging) which existed prior to the period of coverage. The *Morrison* court rejected this argument, holding that the defense of in-

---

1.  The jury instruction in question provided, in relevant part:

> You are further instructed that it is the plaintiff's burden to establish that the losses were incurred within the policy period. If you cannot determine when a given loss occurred or what part of the total claim occurred within the policy period and you must speculate as to when the loss occurred, then you shall find that the plaintiff failed to sustain his burden of proof that the losses were within the policy period.
>
> You are further instructed if you determine that the plaintiff has failed to prove that losses were incurred in the policy period or that he has failed to prove what losses were incurred within the policy period and which were incurred outside of its coverage, then you shall return a verdict in favor of the defendant.

Record, vol. VII, pp. 1056–57.

2.  In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

3.  Although the parties agree that *Morrison* applies to this issue, they do not suggest why this is an appropriate choice of law. However, *Morrison* itself expressly holds that federal maritime law governs the burden of proof issue, and *Morrison*'s exposition is the most recent exposition of maritime law on this question. Therefore, it is clear that *Morrison* is applicable here. *Morrison* also notes that Florida law is not materially different from maritime law with respect to this issue.

4.  Urea dissolves in water; only a small quantity of water will destroy a large amount of urea.

herent vice or defect constituted "an exception to coverage the burden of proving which properly lies with the insurer under an 'all-risks' policy." *Id.* at 431 (footnote omitted). The court then specified the allocation of the respective burdens of proof applicable in a suit under an all-risks policy:

> Morrison, the insured, had the initial burden of proving a loss by showing that the cargo of urea was in good condition when the policy attached and in damaged condition when unloaded from the vessel. The burden then shifted to Insurer, to show exception to coverage.

*Id.* In other words, *Morrison* held that the burden was on the insured to show that some loss occurred during the period of coverage, *i.e.*, that the goods unloaded were not in the same condition or quantity as those loaded onto the vessel.

In the instant case, there was significant dispute at trial regarding whether a loss had in fact occurred and whether any actual loss had occurred within the policy period. Banco Nacional, in effect, argues that all it need show as part of its prima facie case is that it lost urea at some unspecified time, not necessarily during the voyage or discharge. Proof that the loss occurred outside the policy period would be an exception to coverage under Banco Nacional's theory, and thus the burden under *Morrison* would be on Argonaut.

▮ We reject this argument. The plaintiff in a suit under an all-risks insur-

ance policy must show a relevant loss in order to invoke the policy, and proof that the loss occurred within the policy period is part and parcel of that showing of a loss. Rather than being an exception to coverage, as an inherent vice or defect would be, proof that a loss occurred within the policy period is a predicate to the application of the policy. Thus, as *Morrison* indicates, the burden of proving that the loss occurred during the policy period is properly on the insured, Banco Nacional.[5] The instructions in this case inform the jury that Banco Nacional must carry that burden, and that the jury could not speculate on the issue of whether the losses occurred within or after the policy period. We therefore conclude that the jury instructions in this case properly allocated the respective burdens of proof.

## III.  SUFFICIENCY OF THE EVIDENCE

Banco Nacional argues that the trial judge erred in failing to direct a verdict in favor of Banco Nacional on the issue of coverage. It advances two grounds to support this argument. First, Banco Nacional argues that the evidence is wholly insufficient to support the jury verdict. Second, it argues that because all of the affirmative defenses raised by Argonaut were stricken by the trial court, the trial judge was re-

---

**5.** At one point in its brief, Banco Nacional seems to concede as much, stating that "[t]he correct phraseology of the instructions in this case would have informed the jury that if it could not determine that a given loss ... occurred within the policy period, it should find for the Defendant." Brief of Appellant, at 38. Banco Nacional argues in brief that the jury instruction at issue required of Banco Nacional *more* than merely proving that a loss occurred within the policy period; Banco Nacional argues that the jury charge required proof of precisely *when*, during the period of coverage, the loss occurred. *Id.* at 38. We disagree. Reading in context even the portion of jury charge challenged by Banco Nacional, quoted above at footnote 2, it requires proof only that

a loss occurred within the policy period, not precisely when the loss occurred. Moreover, the charge as a whole reinforces this meaning.

Our holding should not be read as requiring an insured to prove the exact cause of the loss or the precise time during the policy period at which the loss occurred. We hold only that the insured must show that a loss did occur at some time within the policy period, and that the jury may not engage in speculation in concluding that a loss occurred within that period. Since we read the jury instructions in this case as requiring nothing more than that, we hold that they are consistent with *Morrison*.

quired to direct a verdict in favor of Banco Nacional. Banco Nacional also argues that the trial judge erred in failing to grant its motion for a new trial on the ground that the verdict was against the great weight of the evidence. We reject these arguments.

The test for determining whether a party is entitled to a directed verdict or judgment notwithstanding the verdict is set forth in *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). We "should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* at 374. It is proper to submit a case to the jury "if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* However, the court may not determine questions of credibility or weigh conflicting evidence or inferences. *Id.* at 375.

■ After reviewing the record before us, we conclude that there was substantial evidence supporting the jury verdict, and that therefore the district court properly denied appellant's motions for a directed verdict and for a judgment notwithstanding the verdict. We reach this conclusion because of the evidence in the record supporting the theory that the Customs figures did not accurately reflect the amount of urea unloaded from the JAGAT PADMINI. The testimony of the bank's own employee, Mr. Duarte, who served as Banco Nacional's representative at the port during the discharge operation, indicated that the bulk urea that was placed in the warehouses at dockside was loaded directly into the ware-

houses without first being weighed. Mr. Duarte further testified that the only time that the urea was weighed was when it left the port on a truck. The record indicated that much of the bulk urea in the warehouses at port remained there for several months after the discharge operation was completed. The weighings of the bulk urea which formed the basis of the Customs figures, however, were completed by November 30, 1974, two days after the unloading was complete. The bank records reflecting the amounts of urea weighed as it left the port were not produced at trial. Thus, Mr. Duarte's testimony would support a conclusion by the jury that a large quantity of urea had escaped weighing by the Customs officials, and that the Customs document does not accurately reflect the amount of urea received in port. Although there is other testimony in the record which conflicts with that of Mr. Duarte, we of course may not weigh this conflicting evidence or make credibility choices among the witnesses. We therefore conclude that there is substantial evidence to support the jury's verdict in favor of Argonaut.[6]

■ We find no merit in Banco Nacional's argument that it is entitled to a directed verdict because the district court struck the affirmative defenses raised by Argonaut. As indicated above, there is evidence in the record to support a conclusion by the jury that Banco Nacional had not carried its burden of proving a loss within the policy period. This provides ample basis for the denial of a directed verdict. In light of this, the fact that the trial judge had stricken the affirmative defenses raised by Argonaut is irrelevant, since the jury could have concluded that Banco Nacional had not proven its case.

---

**6.** In brief, Banco Nacional argues that Argonaut has admitted that a loss of at least $27,000 occurred, in light of the testimony of Mr. Frank Griffen, an employee of Argonaut. The testimony Mr. Griffen in question related to his calculations of the alleged loss of urea based

solely on the Customs figures. However, there was no concession that the Customs figures were accurate; in fact, Argonaut's main defense was a challenge to the accuracy of the records. Therefore, we cannot conclude that Argonaut admitted to a loss.

■ Likewise, we must reject Banco Nacional's argument that the trial judge erroneously denied its motion for a new trial on the grounds that the verdict was against the great weight of the evidence. A motion for a new trial on weight of the evidence grounds is committed to the sound discretion of the district court, and the district court's denial of such a motion will be reversed by the court of appeals only where the record indicates an abuse of that discretion. *Ellis v. Chevron U.S.A. Inc.*, 650 F.2d 94, 97 (5th Cir. 1981); 6A *Moore's Federal Practice*, ¶ 59.08[5] (1979). In this case, we find that the district court did not abuse its discretion in denying Banco Nacional's motion for a new trial.

## IV. EVIDENTIARY ISSUE

The final point raised on appeal by Banco Nacional concerns the decision of the district judge to admit into evidence, over Banco Nacional's objection, certain testimony relating to Banco Nacional's duty to select the type of packaging for the urea shipment. Apparently, Banco Nacional had not specified the type of bag that should be used for the shipment. Banco Nacional objected at trial to the introduction of this testimony on the ground that it was irrelevant. The district judge had previously stricken Argonaut's affirmative defenses to the effect that the bags were inherently defective,[7] and that the negligence of Banco Nacional had caused the loss. After a conference outside of the hearing of the jury, the district judge admitted this evidence on the ground that it was relevant to the issue of whether Banco Nacional had made reasonable efforts to mitigate its damages. Banco Nacional made no request that the district judge instruct the jury that the

evidence was admitted only for this limited purpose, and no such instruction was given. Banco Nacional now argues that the admission of this testimony was prejudicial error.

■ We conclude that the admission of this testimony was not prejudicial error. We need not decide whether legal error was committed in admitting the evidence (though we have considerable doubt that it was error) because Banco Nacional has not convinced us that the error, if any, was prejudicial. We are left unpersuaded by Banco Nacional's argument asserting the possibility[8] that the jury might have found that Banco Nacional did prove its damages but that the jury offset same by Banco Nacional's failure to mitigate in regard to packaging. We conclude that the error, if any, is harmless.

Banco Nacional also argues that this evidence was prejudicial on the issue of liability. They argue that the jury could have considered this evidence and other evidence related to the defective nature of the bags, and returned a verdict of no liability because of Banco Nacional's failure to select proper packaging. We reject this argument. First, the trial judge specifically instructed the jury that the negligence of Banco Nacional or any inherent defect in the bags would not be a defense to the coverage under the policy. Moreover, Banco Nacional failed to request a limiting instruction, to which it clearly would have been entitled, that the jury was not to consider this evidence with respect to any issue of coverage in the case. Such a limiting instruction, coupled with the instruction to the jury mentioned above, would have no doubt cured any error in the admission of this evidence with respect to the issue of liability. Therefore, we conclude on the

---

7. The issue of whether the district judge properly struck the inherent defect defense is not before us, and we express no opinion on that issue.

8. If the jury had found that Banco Nacional proved its damages, but that there was a total

failure to mitigate, the proper verdict would have been a verdict for Banco Nacional for zero damages, rather than the verdict for defendant which the jury actually returned.

basis of this record that no reversible error occurred.[8]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

8. Curiously, Banco Nacional notes in brief, in another context, that this evidence would be relevant to the issue of whether the loss was a "fortuitous" one, an issue with respect to which it bore the burden of proof. Brief of Appellant at 28.