EMPIRE UNDERGROUND STORAGE, INC., Plaintiff,

v.

PROTECTIVE NATIONAL INSURANCE COMPANY OF OMAHA, Defendant.

No. 86–1842–K.

United States District Court, D. Kansas.

June 8, 1988.

9. *See supra,* p. 1180, n. 6.

**1188**

Wm. F. Bradley, Hutchinson, Kan., Steven G. Emerson, Thomas H. Davis, Kansas City, Mo., for plaintiff.

William R. Smith, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the court on cross-motions for summary judgment. This action involves coverage under an "all risks" insurance policy in a dispute between the insured, Empire Underground Storage, Inc. ("Empire"), plaintiff herein, and the insurer, Protective National Insurance Company of Omaha ("Protective"), defendant herein. The sole issue to be resolved by the court is whether plaintiff has sustained its burden of proving that the mysterious loss of propane, for which it seeks coverage, occurred within the policy period. For the reasons set forth herein, the court finds that plaintiff is entitled to coverage for its loss pursuant to the insurance policy issued by defendant.

The facts in this case are not in dispute. The subject insurance policy was issued to plaintiff by defendant on June 29, 1982. The policy, termed an "all risks" policy, insured the following perils:

All Risks of Direct Physical Loss or Damage including Mysterious Disappearance (Exclusion 9.(b) is hereby deleted).

Exclusion 9.(b), which was deleted, had excluded:

UNEXPLAINED LOSS, MYSTERIOUS DISAPPEARANCE OR LOSS OR SHORTAGE DISCLOSED ON TAKING INVENTORY ...;

The policy covered all of plaintiff's "Underground Gas Storage, in Hutchinson, Kansas."

Plaintiff's underground gas storage in Hutchinson, Kansas consists of 36 wells spread over 75 acres of land. Thirty of the wells are storage wells for liquified propane, five are water wells, and one is a disposal well. Plaintiff's underground storage system is a "closed system", meaning each of the caverns or wells are connected by a continuous pipeline. The caverns themselves are at all times full of liquid consisting of brine (salt-water), propane, or a combination of the two. Because brine is heavier than propane, when both are present in a cavern, the propane separates to the top. Consequently, when shipments of propane are pumped *into* a well, the brine is forced out into a long inner tube in the bottom of the well. When propane is pumped *out* of a well, fresh water is pumped into the cavern through the long inner tube, and the propane is displaced and forced up and out through a wide, outer tube toward the top of the cavern.

A layer of propane must be in the cavern at all times. If it is not, the brine will dissolve the salt formation surrounding the cavern and allow propane to escape up beyond the opening of wide outer tubing. If this happens, the propane becomes trapped and is unrecoverable. This is known as a "wash-out".

On June 28, 1978, plaintiff took an inventory of the amount of propane stored in its underground system in order to verify its records. Plaintiff performed a second physical inventory on July 5, 1979. From July of 1979 until November 22, 1982, plaintiff conducted no physical inventories, but maintained a record of its inventory by recording all shipments into or out of the system, and adding or subtracting this amount from the previous total. The amount of propane pumped in or out of the system was measured by use of a single meter. Therefore, in June of 1982, when the insurance policy was issued by defendant, plaintiff relied solely on its "book inventory" for proof of the amount of pro-

pane in storage, and it was this inventory which plaintiff sought to have insured.

On November 22, 1982, plaintiff received an order to ship 100,000 barrels of propane. According to Empire's estimates, the entire 100,000 barrels should have been obtainable from Well No. 13. However, plaintiff was able to pump only 54,149 barrels from that well. Although plaintiff assumed that the missing propane would be found in the remaining wells (caverns), by early 1984 it became apparent that in excess of 55,000 barrels of propane were missing. On June 4, 1984, Empire notified Protective's insurance broker of a probable claim for the mysterious disappearance of the propane. On August 30, 1984, Empire notified Protective that its claimed loss was for 58,813 barrels of propane in an amount of $1,123,916.00. Following the insurance company's investigation of the storage system and the inventory record, the claimed loss is now stated as 50,531 barrels having a value, as of June 30, 1984, of $894,316.83.

Protective's investigation did not reveal the cause of the disappearance of propane. On June 25, 1986, Protective denied the claim because the loss had not been shown to have occurred within the policy period.

Following Protective's denial of the claim, Empire filed suit in state court. The action was subsequently removed to federal court.

Both parties have now filed motions for summary judgment. They agree as to the amount of propane lost and its value, and that the loss was of a type—"mysterious" or "fortuitous"—that was insured. However, they disagree as to whether plaintiff has proved that the time of loss was within the policy period.

A party is entitled to summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the case at bar, no issues of fact remain. Thus, the party which prevails as a matter of law will be entitled to summary judgment.

While the parties agree that plaintiff's loss was "fortuitous", it is helpful to understand the meaning of this term for purposes of an "all risks" insurance policy. In *Texas Eastern Transmission v. Marine Office, Etc.,* 579 F.2d 561 (10th Cir.1978), the Tenth Circuit described an "all risks" policy as:

"A policy of insurance insuring against 'all risks' is to be considered as creating a special type of insurance extending to risks not usually contemplated, and recovery under the policy will generally be allowed, at least for all losses of a fortuitous nature, in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage...."

579 F.2d at 564 (quoting Annot., 88 A.L.R. 2d 1122, 1125 (1963)). The court then adopted the Restatement of Contract's definition of a "fortuitous event":

"A fortuitous event ... is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties."

579 F.2d at 564 (quoting Restatement of Contracts § 291 comment a (1932)).

The court held that when there is a dispute as to coverage under an all risks policy, the burden is on the insured to prove that a loss occurred and that it was due to some fortuitous event or circumstance. 579 F.2d at 564. The burden then shifts to the defendant to show that the loss was one excluded by some language in the policy. *Id.*

In *Texas Eastern,* there was no issue as to whether the loss had occurred in the policy period. Rather, the issue was whether the loss was of a fortuitous nature. Conversely, in the case at bar there is no question that the loss was mysterious or fortuitous. However, there is an issue as to when this loss occurred.

The loss was first discovered in November of 1982 when plaintiff was unable to retrieve propane which, according to its records, should have been in Well No. 13. What happened to this propane or exactly when it disappeared is unknown. Defendant argues that unless plaintiff can prove the propane was lost after the policy was issued, it is not entitled to coverage.

The Eleventh Circuit has addressed the issue of proving time of loss under an all risks policy in *Banco Nacional v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir.1982). In that case, the defendant insurance company had issued an all risks policy insuring from "warehouse-to-warehouse" the shipment of urea. The urea was in good condition when it was loaded. Subsequent to its unloading, however, the plaintiff discovered that much of the urea had been lost due to damaged packaging. It was unknown whether the damage had occurred prior to, or following, the unloading. At trial, plaintiff argued that proof that the loss occurred outside the policy period would be an exception to coverage, thus placing the burden on the insurer to prove when the loss occurred. The trial court rejected this argument and the Eleventh Circuit affirmed, stating:

> We reject [plaintiff's] argument. The plaintiff in a suit under an all-risks insurance policy must show a relevant loss in order to invoke the policy, and proof that the loss occurred within the policy period is part and parcel of the showing of a loss. Rather than being an exception to coverage, as an inherent vice or defect would be, proof that a loss occurred within the policy period is a predicate to the application of the policy. Thus ... the burden of proving that the loss occurred during the policy period is properly on the insured....

681 F.2d at 1340.

Protective argues that *Banco Nacional* controls the case at bar and that plaintiff *cannot* sustain its burden of proving that the loss occurred after the policy was issued.

While the court agrees that plaintiff has the burden of proving a relevant loss within the policy period, it finds that plaintiff has sustained its burden of proving that an insured (relevant) loss *was* sustained after the policy was issued by Protective.

In order to reach this conclusion, the court has necessarily construed the insurance policy in an attempt to discern the intent of the parties. The law in Kansas as to construction of insurance contracts was set forth on *Dronge v. Monarch Ins. Co. of Ohio*, 511 F.Supp. 1, 4 (D.Kan.1979), as follows:

> The law provides that in construing an insurance policy, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished.

The court should ordinarily give effect to the objectively reasonable expectations of the insured. *Hancock Laboratories, Inc. v. Admiral Ins.*, 777 F.2d 520, 523 (9th Cir.1985); *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1041–42 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). In construing the policies' extent of coverage, the objective must be to give effect to the policies' dominant purpose of indemnity. *Hancock*, 777 F.2d at 523.

The starting point in this analysis is determining what property was insured. As previously stated, the policy covered all of plaintiff's underground gas storage in Hutchinson, Kansas. Empire had last taken a physical inventory of the amount of gas in storage in 1979. Since that time, Empire kept track of its inventory by recording the amounts of propane shipped into and out of the storage system.

Protective did not require a physical inventory of the propane at the time it issued the policy. Further, it has not asserted the books were maintained in a fraudulent or erroneous manner. However, Protective argues that it was insuring only the amount *actually* in storage. Thus, according to Protective, if the propane was "lost" prior to the inception of the policy, it was not in storage and so was not insured.

This argument fails for several reasons. First, the policy specifically insures against "mysterious losses". However, if the court were to accept defendant's argument, there would be no coverage for *any* mysterious loss because, without a pre-inception inventory, the plaintiff could never definitively prove the loss occurred within the policy period. It is for this reason that deleted ¶ 9.(b) was worded as excluding "UNEXPLAINED LOSS, MYSTERIOUS DISAPPEARANCE, OR LOSS OR SHORTAGE DISCLOSED ON TAKING INVENTORY...." (Emphasis added.) If the insurer had intended to exclude coverage for a "loss disclosed on taking inventory"—such as occurred here—it would simply have not deleted that phrase. However, the parties clearly recognized that a "loss disclosed on taking inventory" is a mysterious loss which is entitled to coverage. *See Hammontree v. Central Mutual Insurance Co.*, 385 S.W.2d 661, 663 (Mo.Ct. App.1965) ("The second numbered paragraph ... deleted an exclusion in the policy and thereby extended coverage [to that which had previously been excluded]."). Therefore, because the insurer did not require a pre-inception inventory, it impliedly insured the amount of propane recorded in plaintiff's books, and accepted the risk that a loss could be disclosed on taking inventory.

The intent of the parties to insure a mysterious loss disclosed on taking inventory is further demonstrated by the fact that there was a $50,000.00 deductible for "mysterious losses". This was the only deductible requirement in the policy. *A fortiori*, the large deductible requirement in the case of mysterious loss demonstrates the insurer's recognition that the book inventory could contain some discrepancy which it did not intend to insure, while large discrepancies were to be considered insured "mysterious losses".

Finally, defendant's argument regarding the lack of a physical inventory requirement fails because defendant is unable to cite any authority in support of this argument. Although defendant argues that several cases do support its position, its reliance on these cases is misplaced. For instance, defendant finds support in *Banco Nacional*, 681 F.2d 1337, wherein the insurer did not require an inventory when the goods were unloaded, yet plaintiff was still required to prove that a loss occurred.

The situation in *Banco Nacional* is clearly different than the situation in the case at bar. In *Banco Nacional*, the amount of urea insured was never in issue. There was no question that this amount "existed" at the inception of the policy. In the case at bar, however, there is a dispute as to the amount of property to which the insurance attached. The issue, then, is what did the parties intend to insure. This intent must be gleaned from the policy as a whole. In *Banco Nacional*, there was no dispute as to the parties' intent; the issue was whether the property was damaged *after* the policy ended and involved a question of fact for the jury. An issue of the parties' intent is a question of law for the court. Thus, *Banco Nacional* does not support defendant's argument.

Defendant also relies on several cases wherein the courts held that the burden was upon the insured to prove that damaged property had been in good condition at the time of the policy's inception. *See Greene v. Cheetham*, 293 F.2d 933 (2d Cir. 1961); *Monarch Industrial Corp. v. American Motorists Ins. Co.*, 276 F.Supp. 972 (S.D.N.Y.1967); *Nevers v. Aetna Ins. Co., Inc.*, 14 Wash.App. 906, 546 P.2d 1240 (1976); *Oran Ltd. v. Fireman's Fund Ins. Co.*, 301 So.2d 830 (Fla.App.1974). These cases are inapposite, however, as the insurance policies in each contained an exclusion for inherent vices or defects. In the case at bar, the exclusion for "mysterious losses" and "losses disclosed on taking inventory" was deleted.

In sum, the court finds that by failing to require a pre-inception inventory, the defendant intended to insure the amount of propane reflected in plaintiff's book inventory. This intent is supported by the fact that defendant did not allege fraud on the part of plaintiff in maintaining the inventory. Further support is gleaned from the insurance policy as a whole, including the parties' intent to insure against all mysterious losses, the deletion of the "myste-

rious loss" exclusion, and the deductible requirement for mysterious losses. In this court's view, coverage of the loss herein would be an objectively reasonable expectation of the insured. Accordingly, the court finds that plaintiff has sustained its burden of proving that an insured loss occurred *after* the insurance policy took effect.

IT IS ACCORDINGLY ORDERED this 8 day of June, 1988, that plaintiff's motion for summary judgment is granted, and defendant's motion is denied.