[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14517

_____

GREAT LAKES INSURANCE SE,

Plaintiff-Counter
Defendant-Appellee,

*versus*

WAVE CRUISER LLC,

Defendant-Counter
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20397-DLG

_____

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

JILL PRYOR, Circuit Judge:

This case arises out of an insurance dispute between Great Lakes Insurance SE ("Great Lakes") and Wave Cruiser LLC ("Wave Cruiser"). Wave Cruiser purchased an "all risks" insurance policy from Great Lakes covering a vessel that Wave Cruiser had recently acquired. The policy did not cover engine damage unless an accidental external event caused the damage. After Wave Cruiser purchased the policy, the vessel suffered catastrophic engine failure. Wave Cruiser submitted a claim on its policy. Great Lakes denied the claim, explaining that Wave Cruiser had not shown that an external event caused the engine damage.

Great Lakes filed suit for a declaratory judgment that Wave Cruiser's policy did not afford coverage for the loss. Wave Cruiser filed counterclaims for breach of contract and breach of the duty of good faith and fair dealing. The district court granted summary judgment to Great Lakes. The district court concluded that Wave Cruiser failed to come forward with evidence that an external event caused the engine damage.

On appeal, Wave Cruiser argues that the district court incorrectly placed the burden on it to prove at trial that an external event caused the engine damage. Wave Cruiser also argues that the district court abused its discretion by considering expert testimony from a lay witness. After careful consideration, and with the benefit

of oral argument, we affirm. We agree with the district court that Wave Cruiser had the burden to come forward with evidence that an external event caused the engine failure. We also conclude that although the district court incorrectly considered expert opinion from a lay witness, summary judgment was appropriate because Wave Cruiser failed to create a genuine dispute of material fact as to whether an external event caused the engine failure.

## I.     BACKGROUND

We begin by describing the insurance policy that Wave Cruiser purchased from Great Lakes. We then turn to the incident that caused Wave Cruiser to make a claim on that policy and the litigation that followed.

### A.     The Insurance Policy

Great Lakes issued policy No. CSRYP/175137 (the "Policy") to Wave Cruiser. The Policy provided $310,000 in coverage for Wave Cruiser's 2003 45' Viking (the "vessel") and ran from April 25, 2019 to April 25, 2020. The Policy was "an 'all risks' form of marine insurance policy" that covered "any loss and or damage" to the vessel that was "accidental, fortuitous in nature and . . . incidental" to the vessel's use. Doc. 25-1 at 22.[1] But the Policy did not provide coverage for all types of damage and contained several exclusion provisions identifying types of damage the Policy did not cover. Under Exclusion r, the Policy provided no coverage for

---

[1] "Doc." numbers refer to district court docket entries.

"[d]amage to the Scheduled Vessel's engines . . . unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire." *Id.* at 6.

The Policy also included a choice of law provision. This provision provided that "entrenched principles and precedents of substantive United States Federal Admiralty law" would govern disputes under the Policy. Doc. 25-1 at 16. If no entrenched federal admiralty principles or precedents existed, then the Policy called for the application of New York substantive law.

## B.    The Vessel's Engine Failure

Before Wave Cruiser purchased the vessel, a surveyor completed a prepurchase report on it. The surveyor concluded that the vessel and its machinery were "primarily sound." Doc. 22-3 at 13. He also recommended that the engines be inspected to make sure they worked properly. At some point a marine diesel technician performed a 2500-hour service inspection on the vessel's engines and reported that they were in "great shape." Doc. 25-5 at 3. A few months later, however, the vessel's port engine suffered catastrophic engine failure.[2] The vessel's engines had operated for 17

---

[2] In its brief, Wave Cruiser states that "[t]he engine's failure occurred well before the end of the engine's projected lifespan" but does not cite anything in the record to support this statement. Appellant Br. at 11. Wave Cruiser submitted a "Statement of Material Facts" to the district court alongside its motion for summary judgment which also stated that the engine failed before the

hours between the surveyor's prepurchase inspection and the port engine failure. The captain of the vessel did not report rough weather or anything else unusual and described the engine failure "as sudden and unexpected." Doc. 25-5 at 2.

Wave Cruiser's agent reported the engine failure to Great Lakes. Great Lakes' underwriter assigned Arnold & Arnold Inc. to investigate the claim. An Arnold & Arnold surveyor named Captain Ian Allen inspected the vessel. Allen had been a surveyor for Arnold & Arnold since 2012, but he had no "training or certification on the type of" engine that failed in the vessel. Doc. 49-1 at 8. He also did not consider himself an expert on internal combustion engines or, more specifically, diesel engines.

After his inspection, Allen issued his "First Report." Doc. 22-5 at 1. In the report, Allen determined that the cause of the engine failure could only be determined by removing and dissembling the engine. He found no evidence of an external cause but did posit some "possible causes" and noted that the "most likely" cause of the damage was "fatigue failure of one or more parts." Doc. 25-5 at 4. After completing his inspection, Allen sent Wave Cruiser a letter

---

end of its lifespan. Doc. 22 at 2. This document does not provide a record cite to support this statement. A review of the record also provides no support for this statement. Under Southern District of Florida Local Rules, a fact in a statement of material facts can only be admitted if it is supported by properly cited record evidence. S.D. Fla. L.R. 56.1(c). Because the statement concerning the engine's lifespan was not supported by record evidence, we will not consider it.

explaining that Great Lakes reserved its right to deny coverage for the claim under the policy's Exclusion r.

Wave Cruiser notified Allen that it had removed the damaged port engine from the vessel and invited him to examine it again. Allen submitted another report after inspecting the engine. *See* Doc. 25-7. In this report, he observed that the gaskets for the engine's cylinder heads and oil pan were old. He noted there were clamshells on the intake side of the engine's water pump, but he could not explain how the clamshells entered the water pump because the intake strainer was intact. He noted that although clams could restrict intake flow, "there was no evidence of the engine overheating." Doc. 25-7 at 2. Allen next examined engine cylinder parts that had come off the engine when it failed. He observed "elongation of a connecting rod top" on one of the engine's cylinders and reported that "[e]longation is generally a type of damage that would occur over a period of time, rather than in a sudden failure." Doc. 25-7 at 2. Allen ended his report by stating that he could not determine with certainty which engine part failed first. But he concluded that "we can say with certainty that there was excess friction at the cylinder one and six connecting rod journal, and an internal engine failure did occur in this area." *Id.* at 3. During his deposition, Allen testified that he "could not find evidence of an external event that would have precipitated the" engine failure. Doc. 49-1 at 6.

Allen recommended that Great Lakes continue to reserve its right to deny coverage under the Policy. A short time later, Allen

sent Wave Cruiser a letter denying its claim. The letter stated that there was no evidence of an external cause for the engine failure. Citing Exclusion r, the letter explained that the Policy did not cover engine damage unless caused by an accidental external event.[3]

## C.    Procedural History

Great Lakes brought this action seeking a declaratory judgment that the Policy did not cover the vessel's damaged engine. Wave Cruiser filed a counterclaim alleging that Great Lakes breached the terms of the Policy by failing to investigate the claim fully and cover the loss. The counterclaim also alleged that Great Lakes breached its duty of good faith and fair dealing.

Wave Cruiser filed a motion for summary judgment on its breach-of-contract counterclaim. Great Lakes filed a motion for summary judgment on its declaratory-judgment claim. In its motion, Great Lakes argued that it "remains Capt. Allen's expert opinion that there was no evidence that an external event caused the failure of the port engine." Doc. 24 at 2. Wave Cruiser then filed a motion to strike Allen as an expert witness because Great Lakes failed to disclose that he was an expert in accordance with Federal Rule of Civil Procedure 26(a)(2)(B). The district court denied the

---

[3] The letter also cited Exclusion b which denies coverage for losses "due to wear and tear, gradual deterioration, . . . [and] weathering[.]" Although Wave Cruiser argued that there was no evidence that the engine failure was caused by the losses included in Exclusion b, *see* Appellant Br. at 14, it does not cite to any evidence for that proposition nor does it discuss it further in its briefing.

motion but ordered that Wave Cruiser depose Allen. During his deposition, Allen testified that he did not have expert knowledge about engines and did not consider himself an expert witness. After the deposition, Great Lakes filed a notice withdrawing Allen as an expert. Great Lakes argued that "[i]nstead, the evidence offered by Capt. Allen should be considered merely as the evidence of a lay witness." Doc. 48 at 1.

The district court issued an order granting Great Lakes' motion for summary judgment and denying Wave Cruiser's motion for summary judgment. The district court applied a three-part burden shifting framework to determine whether the Policy covered Wave Cruiser's claim. Under this framework, Wave Cruiser had the initial burden to present evidence that it suffered a fortuitous loss within the Policy period. Once Wave Cruiser did this, the burden would shift to Great Lakes to establish that a policy exclusion applied. If Great Lakes established an applicable exclusion, the burden would return to Wave Cruiser to produce evidence that an exception to the policy exclusion applied.

The district court determined that Wave Cruiser met its initial burden by presenting evidence that the vessel was well maintained and recently serviced and that the engine failed suddenly and unexpectedly. The district court then considered whether Great Lakes could show that an exclusion to the Policy applied. Great Lakes argued that Exclusion r applied because it excluded engine damage unless caused by an external event, and the district court agreed. The district court rejected Wave Cruiser's argument that

Great Lakes—and not Wave Cruiser—had to prove the cause of the engine damage. Instead, the district court shifted the burden back to Wave Cruiser to present evidence that the exception to Exclusion r—engine damage caused by an external event—applied. The district court concluded that Wave Cruiser failed to carry its burden of proof, stating that the "total absence of evidence showing an external event necessarily means that there is no evidence triggering the exception to Exclusion r[.]" Doc. 56 at 23. Thus, the district court concluded, Great Lakes was entitled to summary judgment.[4]

The district court entered final judgment in favor of Great Lakes. Wave Cruiser timely appealed to this Court.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must draw all reasonable inferences in favor of the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

---

[4] After determining that the Policy did not cover Wave Cruiser's claim, the district court dismissed Wave Cruiser's counterclaim for breach of covenant of good faith and fair dealing.

We review a district court's evidentiary rulings for abuse of discretion. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1103 (11th Cir. 2005). "However, even a clearly erroneous evidentiary ruling will be affirmed if harmless." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016).

## III.    DISCUSSION

Wave Cruiser contends that the district court erred in granting summary judgment to Great Lakes because it incorrectly placed the burden on Wave Cruiser to prove that an external event caused the engine failure. In addition, it argues that the district court abused its discretion by considering expert opinion evidence from Allen, who conceded that he was not an expert.

After careful review, we conclude that the district court properly granted summary judgment to Great Lakes. Wave Cruiser bore the burden to prove at trial that an external event caused the engine failure, and it failed to come forward at summary judgment with evidence to meet this burden. And although the district court erred by considering Allen's opinion testimony, we nonetheless hold that the error was harmless.

A.    **The District Court Correctly Granted Summary Judgment Because Wave Cruiser Failed to Come Forward with Evidence to Meet Its Burden to Prove that an External Event Caused the Engine Failure.**

Wave Cruiser contends it did not have to prove that an external event caused the vessel's engine failure. Instead, it argues, to establish that Exclusion r applied, Great Lakes bore the burden of

proving that an internal event caused the engine failure. Before we can resolve which party had the burden to prove what caused the vessel's engine to fail, we must determine what law applies.

1.      Applying the Parties' Choice of Law, Wave Cruiser Had the Burden to Prove that an External Event Caused the Engine Failure.

Because the Policy provides for marine insurance, it "give[s] rise to admiralty jurisdiction." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009). "When admiralty jurisdiction is invoked, a uniform body of federal maritime law applies." *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1061 (11th Cir. 2013). The Policy's choice-of-law provision states that disputes should be "adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of" New York. Doc. 22-1 at 16. Our Circuit has never examined whether a choice-of-law provision is enforceable under federal maritime law, making this a question of first impression. Other circuits have enforced choice-of-law agreements in maritime contracts, however.[5] *See e.g., Chan v. Soc'y Expeditions, Inc.*, 123 F.3d

---

[5] Although we have never decided whether a choice-of-law clause is enforceable under federal maritime choice-of-law rules, we have suggested in dicta that they are. In *GEICO Marine Insurance Company v. Shackleford*, 945 F.3d 1135,

1287, 1296–97 (9th Cir. 1997) ("[W]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice."). Indeed, the Fifth and Third Circuits have enforced choice-of-law provisions with the exact same language as the provision at issue here. *See Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 245 (5th Cir. 2009) ("[E]ither the general maritime law . . . or New York law, . . . governs the parties' rights under the instant marine insurance policy."); *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 261 (3rd Cir. 2008) ("[T]he Policy, and its choice of law provision, was in effect at the time the Yacht sank, and governs this dispute."). We see no reason to depart from our sister circuits by declining to enforce the parties' choice-of-law agreement in this case. We note that the Fifth Circuit applied the choice-of-law provision in *Durham Auctions* because no party showed that its application "would be unreasonable or unjust." 585 F.3d at 244. We have no occasion today to decide whether we would refuse to enforce a choice-of-law clause in a maritime contract if its enforcement would be unreasonable or unjust because neither party argues that here.

The Policy's choice-of-law provision first directs us to determine whether there are any entrenched principles or precedents of

---

1137 (11th Cir. 2019), we examined whether a marine insurance policy covered damage to a yacht. We applied federal maritime law, noting that "[t]he parties could have included a choice-of-law provision selecting state law over federal law[.]" *Id.* at 1143.

admiralty law that would govern this dispute. Wave Cruiser points to two published maritime-law decisions, arguing they establish that for Exclusion r to apply and bar coverage of Wave Cruiser's claim, Great Lakes had to prove the cause of the vessel's engine failure. Upon review, we do not believe they answer the question before us.

Wave Cruiser's argument relies primarily on *Morrison Grain Co., Inc. v. Utica Mutual Insurance Co.*, 632 F.2d 424 (5th Cir. 1980).[6] That case arose out of an insurer's refusal to pay its insured's claim for damage to a ship's cargo. *Id.* at 426–27. The policy at issue insured "against all risks of physical loss or damage to property from any external cause." *Id.* at 427 (internal quotation marks omitted). The insured sued; the district court concluded that the insurer had to pay the insured's claim for the damaged cargo. *Id.* at 428. On appeal, the Fifth Circuit had to determine the "respective burdens of proof" under the policy of the insurer and the insured. *Id.* at 427.

The insurer argued that for coverage to apply, the insured had the burden to prove that something external damaged the cargo. *Id.* at 429. The Fifth Circuit disagreed, reasoning that "[i]t would seem to be inconsistent with the broad protective purposes of 'all risk' insurance to impose on the insured . . . the burden of

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

proving the precise cause of the loss or damage." *Id.* at 430. The court held that an insured under an all-risk policy had the "not . . . particularly onerous" burden to show a fortuitous loss. *Id.* The insured could meet this burden by showing that the cargo was in good condition when the insurance company issued the policy and was found to be damaged when it was unloaded from the vessel. *Id.* at 431. Once the insured made this showing, then the burden shifted to the insurer to establish the applicability of any exclusions to coverage. *Id.*

Wave Cruiser also points to *Banco Nacional De Nicaragua v. Argonaut Insurance Co.*, 681 F.2d 1337 (11th Cir. 1982), decided a few years later. That case likewise involved an insurance policy that covered "all risks of physical harm to [certain cargo] caused by any external force, subject to certain exceptions." *Id.* at 1339. The insurer denied coverage for the loss and the insured filed suit. *Id.* On appeal, we reiterated the burden-shifting framework from *Morrison Grain*. *Id.* The insured had the initial burden to show that a fortuitous loss occurred within the policy period. *Id.* at 1340. The burden then shifted to the insurer to show that an exclusion to coverage applied. *Id.*

According to Wave Cruiser, these two cases establish that it did not have the burden to prove that an external event caused the vessel's engine failure. The problem for Wave Cruiser is that *Morrison Grain* and *Banco Nacional De Nicaragua* do not answer the ultimate question in this case. Both cases addressed the parties' respective burdens under an "all risk" policy, holding that insured

parties do not have to show the cause of damage to meet their initial fortuitous-loss burden under such policies. Neither case examined a policy with an exclusion that was subject to an exception. In contrast, here, Exclusion r states that the Policy does not cover engine damage "unless caused by an accidental external event[.]" Doc. 25-1 at 6. Our review of federal admiralty law has uncovered no authority or principle to guide us on who bears the burden to prove the cause of the loss under an exclusion like this one.

Because federal admiralty precedent sheds no light on how Exclusion r allocates the burden of proof, the Policy's choice-of-law provision points us to New York law. The Court of Appeals of New York has examined policy exclusion provisions that include exceptions. *See Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 679 N.E.2d 1044 (N.Y. 1997). We find its analysis instructive.

*Northville Industries* concerned general liability insurance purchased by a gasoline-storage business. *Id.* at 1046. The policy contained an exclusion provision barring coverage for damages "arising out of the discharge, dispersal, release or escape of toxic chemicals, liquids or other pollutants into or upon land but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental*." *Id.* (alterations adopted) (emphasis in original). Two of the insured's facilities released gasoline into the groundwater. *Id.* Neighboring properties sued. *Id.* When the insured sought coverage under the policy, the insurer refused, citing the exclusion. *Id.* The insured brought a declaratory judgment

action to establish that its insurer had an obligation to defend and indemnify it. *Id.* On appeal, the Court of Appeals of New York had to determine whether the exclusion foreclosed coverage. *Id.* at 1047–49. The court held that once the insurer showed the exclusion precluded coverage, "the burden shift[ed] to the insured to demonstrate" that an exception to the exclusion applied. *Id.* at 1048; *see also Ment Bros. Iron Works Co., v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012) ("Once the insurer establishes that an exclusion applies, however, New York law has evolved to place the burden of proof on the insured to establish the applicability of an *exception to the exclusion.*" (emphasis in original)).

The court's analysis in *Northville Industries* is easily applied to Exclusion r. Great Lakes had the burden to establish that Exclusion r precluded the claim because the claim was for engine damage. Then the burden shifted back to Wave Cruiser to prove that the exception to Exclusion r applied because an accidental external event caused the loss.

To sum up, the Policy's choice-of-law provision first points us to federal admiralty law, which provides that under an all-risk maritime insurance policy an insured has the initial burden to provide evidence that a fortuitous loss occurred within the policy period. *Morrison Grain Co., Inc.,* 632 F.2d at 430–31; *Banco Nacional De Nicaragua*, 681 F.2d at 1339–40. The burden then shifts to the insurer to demonstrate that an exclusion provision forecloses coverage. *Morrison Grain Co., Inc.,* 632 F.2d at 431. Federal admiralty law is silent, however, when it comes to which party has the

20-14517                    Opinion of the Court                    17

burden to prove that an exception to the exclusion applies. In the absence of governing federal admiralty law, the Policy's choice-of-law provision directs us to apply New York law, which places this burden on the insured. *Northville Indus. Corp.*, 679 N.E.2d at 1048. We conclude that the district court did not err in placing the burden on Wave Cruiser to prove that an external event caused the engine failure, and therefore the damage fell within the exclusion's exception.

2.      Summary Judgment was Appropriate Because Wave Cruiser Failed to Come Forward with Evidence that an External Event Caused the Engine Failure.

Applying the burden shifting framework established by New York law, we conclude that Wave Cruiser offered sufficient evidence to meet its initial burden. Great Lakes then met its burden under the framework to demonstrate that Exclusion r applied. But Wave Cruiser failed to come forward with evidence to create a genuine issue of material fact on the ultimate issue—on which it bore the burden of proof at trial—of whether an external event caused the engine failure.

As an initial matter, Wave Cruiser had to demonstrate that the vessel's engine failure was a fortuitous loss under the Policy. The evidence shows that a marine diesel technician performed a 2500-hour inspection on the engines and found them to be in great shape. The vessel's port "engine was operated seventeen hours between the time of survey and the time of engine failure." Doc. 25-5 at 2. The failure was "sudden and unexpected." *Id.* In *Morrison*

*Grain*, we held that the insured demonstrated a fortuitous loss by presenting evidence that the cargo was in good condition when the ship departed and in a damaged condition when the ship arrived. *Morrison Grain*, 632 F.2d at 431–33. Likewise, here, Wave Cruiser presented evidence that the engine was in good condition at the time the Policy attached and then stopped working unexpectedly. This is enough at the summary judgment stage for Wave Cruiser to meet its "not . . . particularly onerous" burden to provide evidence of a fortuitous loss. *Id.* at 430.

The burden then shifted to Great Lakes to establish that Exclusion r applied. Because Exclusion r unambiguously precluded coverage for damage to the vessel's engine "unless caused by an accidental external event," Great Lakes met this burden by showing that Wave Cruiser's claimed loss was engine damage. Doc. 25-1 at 6.

Wave Cruiser then bore the burden to prove that the exception to the exclusion applied. "To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Wave Cruiser did not present any evidence identifying what caused the engine failure. Instead, Wave Cruiser argues that the same evidence that satisfied its fortuitous-loss burden also created a genuine dispute of material fact concerning whether an external event caused the engine failure. We disagree. To survive summary judgment on its fortuitous-loss burden,

Wave Cruiser did not have to create a genuine dispute of material fact concerning the "cause of the loss." *Morrison Grain*, 632 F.2d at 430. But that is precisely what it had to do once the burden shifted back to Wave Cruiser to prove that the exception to Exclusion r applied. The evidence that the vessel received a 2500-hour inspection and was found to be in great shape says nothing about what caused the engine failure; thus, it did not create a genuine dispute of fact on this issue. To hold otherwise would collapse Wave Cruiser's two separate burdens into one, with the effect that Exclusion r would, essentially, be read out of the Policy.

Neither party in this case has submitted evidence of what caused the engine failure. But Wave Cruiser had the burden at trial to prove that an external event caused the port engine to fail. "Where, as here, the non-moving party bears the burden of proof on an issue at trial, the moving party" may prevail on summary judgment by "show[ing] that the non-moving party has no evidence to support its case[.]" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994). Great Lakes has shown that Wave Cruiser has no evidence that an external event caused the engine failure, so the district court properly granted summary judgment to Great Lakes.[7]

---

[7] Wave Cruiser argues that Allen testified that the engine failure had an external cause, and that Great Lakes improperly changed this testimony with an errata sheet. Great Lakes' errata sheet sought to make four changes that substituted the word "external" for the word "internal" or made similar alterations. Great Lakes maintains that the changes corrected transcription errors.

### B.    The Court Abused Its Discretion by Considering Expert Opinion Evidence from Allen, But this Error was Harmless.

Wave Cruiser also argues that the district court abused its discretion by considering expert opinion evidence from Allen's survey reports and his deposition. Great Lakes withdrew Allen as an expert witness, but the district court considered his testimony and survey reports as lay opinion evidence under Federal Rule of Evidence 701. We conclude that the district court abused its discretion by considering Allen's opinions, but this error was harmless.

Under Federal Rule of Evidence 701, "a lay witness may offer opinions that are: '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Hill*, 643 F.3d 807, 840–41 (11th Cir. 2011) (quoting Fed. R. Evid. 701). "This rule of evidence is designed to prevent parties from proffering an expert in lay witness clothing by ensuring that testimony that is actually expert passes the strictures of Rule 702." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1372 (11th Cir. 2014) (internal quotation

---

"[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). We need not decide which party is correct about the errata, however, because, as we explain below, Wave Cruiser is correct that Allen's opinions on the cause of the engine failure are inadmissible.

marks omitted). Lay opinion testimony cannot "provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001).

In this case, the district court noted Allen's observation regarding the clamshells found on the intake side of the pump and his speculation that although "such marine organisms would restrict intake flow," these clams likely did not since "there was no evidence of the engine overheating." Doc. 56 at 5. It also considered Allen's opinion that the elongation of one of the engine's connecting rods was the kind of damage that occurred over a period of time. In addition, the district court took into account Allen's opinion that "there was excess friction at the cylinder one and six connecting rod journal and an internal engine failure did occur in this area." Doc. 56 at 6. The district court correctly considered Allen's testimony about the presence of clams and that the connecting rod was elongated because this testimony was "based on [his] firsthand knowledge" and observations. *United States v. Rivera*, 780 F.3d 1084, 1094 (11th Cir. 2015) (internal quotation marks omitted). Likewise, it was within the district court's discretion to consider Allen's statement that there was excess friction on cylinders one and six because it, too, was based on his observations of the engine parts. But the inferences Allen drew, that the clams did not cause the engine to overheat and fail, that the elongation took place over a period of time, and that the excess friction at cylinders one and six was connected to the engine failure, "blurs into supposition and

extrapolation [which] crosses the line into expertise." *Lebron*, 772 F.3d at 1372. To be admissible, these opinions would have to be based on "specialized knowledge." Fed. R. Evid. 701. By his own admission, Allen does not have specialized knowledge about the engine in this case or internal combustion engines in general. The district court therefore abused its discretion by considering Allen's opinions about the cause of the engine failure.

Although the district court abused its discretion, we conclude that this error was harmless. The district court's grant of summary judgment to Great Lakes was appropriate because Wave Cruiser failed to produce evidence to create a genuine dispute of material fact concerning whether an external event caused the vessel's port engine failure. The inadmissibility of Allen's opinions does not change this.

## IV.    CONCLUSION

We conclude that (1) the district court did not err by placing the burden on Wave Cruiser to provide evidence that an external event caused the vessel's port engine to fail, and (2) the district court committed harmless error by considering inadmissible expert opinion testimony. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**