United States Court of Appeals,

Fifth Circuit.

Nos. 92-2368, 92-2459 and 92-2621.

NEW HAMPSHIRE INSURANCE CO., et al., Plaintiffs-Appellees,

v.

MARTECH USA, INC., f/k/a Martech International, Inc., Defendant-Third-Party Plaintiff-Appellant,

v.

TTP OF HOUSTON, INC., etc., et al., Third-Party Defendants-Appellees.

June 28, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

This appeal poses a question about the allocation of burdens of proof on a claim under an all-risk marine insurance policy. Martech USA, Inc. appeals an adverse summary judgment and the denial of Fed.R.Civ.P. 60(b) relief. Finding no error, we affirm.

Background

Martech provides underwater diving services and equipment for construction and repair of offshore drilling platforms and pipelines. Martech retained TTP, an insurance brokerage firm, to secure insurance coverage for its equipment and for claims arising out of its business operations. TTP obtained two contractors' equipment all-risk marine insurance policies underwritten by New Hampshire Insurance Co., American Home Assurance Co., and National Union Fire Insurance Co.: (1) policy BMF-10231, effective April 24, 1986 to April 24, 1987,[1] and (2) policy BMF-10260, effective April 24, 1987 to April 24, 1988.[2] The policies covered:

[E]quipment, mobile cranes or diving equipment, and related spare parts, materials and

---

[1]Under BMF-10231, 50% of the risk was underwritten by NHIC, and 25% each by AHAC and NUFIC.

[2]100% of the risk under BMF-10260 was underwritten by AHAC.

supplies usual to the business and owned by [Martech] and/or similar property of others for which [Martech] may be liable while situated and/or being used, including transit anywhere in the world.

In 1984, Martech leased certain equipment to Aquaservice, Ltd., a Brazilian company providing diving repair services for Petrobras, the Brazilian national oil company. Under the lease agreement, Martech shipped from its Louisiana office to Aquaservice in Brazil: the No. 1 and No. 2 SAT Systems,[3] the ROV Scorpio,[4] and the SIMRAD System.[5]

*The Summary Judgment Evidence*

In February 1987, Martech was orally notified by one of its mechanics who inspected the equipment in Brazil that some of the components of the No. 2 SAT System were missing. The mechanic did not report any damage to the remaining Martech equipment.[6] The No. 2 SAT System was taken out of service in March 1987.[7]

In January 1988, Martech received unconfirmed information that other pieces of its equipment had been damaged. Martech's president, Benjamin Tisdale, met with Pete Barbara, a TTP insurance agent, to discuss the problems. At the time, however, Tisdale could confirm neither that the losses had occurred nor the extent of any damage. Barbara instructed Tisdale to prepare written documentation of the losses and to forward that information so he could prepare a claim.

It was more than a year later, in March of 1989, that Martech sent Barbara a report of its losses after it inspected and inventoried damage when the equipment was returned to the United States. Martech contends that much of the delay was caused by the Brazilian government's failure

---

[3]An SAT system is a saturation system or underwater decompression chamber.

[4]The ROV Scorpio is an underwater roving vehicle which may be remotely operated.

[5]The SIMRAD System is an underwater acoustical beacon.

[6]No evidence was presented that the mechanic even inspected the other equipment. Martech indicates that it did not file a claim at this time because it relied on Aquaservice to fulfill its obligation to return the equipment in the condition received.

[7]When Martech first made a written report of its losses in 1989, it indicated that the No. 2 SAT System was removed from service on an offshore rig in December 1986; Martech does not know, however, whether the damage occurred on the rig or after the equipment was returned to shore.

to cooperate in the return of the equipment to the United States. Barbara submitted a claim under the policies which the insurance companies denied, citing: (1) untimely notice of claim, (2) lack of proof that the loss occurred during the policy period, and (3) certain policy exclusions.[8]

The insurance companies filed a declaratory judgment action, seeking a declaration that they had no liability to Martech under the policies. Martech counterclaimed, alleging that the insurance companies arbitrarily and wrongfully denied coverage. Martech also filed a third-party action alleging that TTP was negligent in two respects: (1) failing to provide notice to the insurance companies in January 1988 that Martech had suffered a loss for which they may make a claim, and (2) failing to inform Martech that delay in making a claim might lead to the claim's rejection.

The district court granted summary judgment in favor of the insurance companies and TTP. Martech later moved for 60(b) relief on the ground that it had newly discovered "evidence" which would establish that the losses occurred during the policy period. The district court found this new "evidence" unpersuasive and denied the motion. From these orders, Martech timely appealed.

Analysis

I. *The Summary Judgment*

Standard of Review

We review a summary judgment *de novo,* viewing the evidence and inferences therefrom in the light most favorable to the nonmoving party.[9] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

[8]The insurance companies relied on the following exclusions:

> This policy does not insure:
>
> D. Against unexplained loss, mysterious disappearance, nor loss or shortage disclosed upon taking inventory; [or]
>
> E. Against loss, damage or expense caused by or resulting from infidelity or any dishonest act on the part of the insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted.

[9]*U.S. Fidelity & Guaranty Co. v. Wigginton,* 964 F.2d 487 (5th Cir.1992); *Baton Rouge Building & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879 (5th Cir.1986).

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

## Whose Law Applies?

The threshold issue in this appeal is whether Texas or federal maritime law should control the burdens of proof. A marine insurance contract is indisputably a marine contract within federal admiralty jurisdiction.[11] In most instances, however, regulation of marine insurance is a matter properly left to the states.[12] In determining whether federal maritime law governs an issue the court must consider three factors: (1) whether the federal maritime rule constitutes "entrenched federal precedent"; (2) whether the state has a substantial, legitimate interest in application of its law; and (3) whether the state's rule is materially different from the federal rule.[13]

The district court, finding no entrenched federal precedent, applied Texas law and placed the burden on Martech to demonstrate that the loss occurred within the policy period and that policy exclusions did not apply. The court granted summary judgment in favor of the insurers, finding that Martech failed to come forward with evidence on these issues. Martech contends that the district court erred in not applying federal maritime law. We need not decide whether federal maritime law or Texas law applies because the same result obtains under either standard.

## Policy Exclusions

Under federal maritime law, the insurer has the burden of proving the applicability of policy exclusions.[14] At the time of the hearing on the motion for summary judgment, Texas law placed the burden on the insured to prove the non-applicability of the policy exclusions invoked by the insurer.[15]

---

[10]*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[11]*See Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 886 n. 2 (5th Cir.) (citations omitted), *cert. denied,* --- U.S. ----, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991).

[12]*See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *5801 Associates, Ltd. v. Continental Ins. Co.,* 983 F.2d 662 (5th Cir.1993).

[13]*Albany Insurance,* 927 F.2d at 886.

[14]*Morrison Grain Co. v. Utica Mutual Ins. Co.,* 632 F.2d 424 (5th Cir.1980).

[15]*Sherman v. Provident Amer. Ins. Co.,* 421 S.W.2d 652 (Tex.1967).

Texas law changed, however, while the motion for summary judgment was pending. Effective September 1, 1991, Article 21.58 of the Texas Insurance Code was amended to provide in pertinent part:

> (b) In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

Thus, under either federal maritime law or Texas law, the burden is on the insurer to prove the applicability of policy exclusions.

Loss Within the Policy Period

The essential question for purposes of this appeal is which party bears the burden of proving that the loss occurred within the policy period. Under Texas law, both before and after the amendment, proof that the loss occurred within the policy period is a *precondition* to coverage and, thus, the insured's responsibility.[16] The parties disagree on who bears that burden under federal maritime law. They agree, however, that we should look to *Morrison Grain* for our answer.

The insurers rely on the interpretation of *Morrison Grain* by the Eleventh Circuit in *Banco Nacional v. Argonaut Ins. Co.*:[17]

> The plaintiff in a suit under an all-risks insurance policy must show a relevant loss in order to invoke the policy, and proof that the loss occurred within the policy period is part and parcel of that showing of a loss. Rather than being an exception to coverage, as an inherent vice or defect would be, proof that a loss occurred within the policy period is a predicate to the application of the policy. Thus, as *Morrison [Grain]* indicates, the burden of proving that the loss occurred during the policy period is properly on the insured[.]

---

[16]*Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988).

> An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that the damages are covered by his policy.... [T]he time of the insured's damage is a precondition to any coverage rather than an exception to general coverage. Thus, we hold that [the insurer's] general denial placed the burden on the [insured] to prove that their [property] was damaged during the policy period.

Id. Martech argues that Article 21.58 changes this allocation of the burden as well. We disagree. Article 21.58 applies to language of exclusion and *exceptions* to coverage. As the court in *Block* pointed out timing of loss is a *precondition* to coverage, not an exception.

[17]681 F.2d 1337 (11th Cir.1982).

Martech contends that *Banco Nacional* misreads *Morrison Grain.* In *Morrison Grain,* the court found that the insurer had the burden of proving that the loss to the insured shipment was a result of an inherent defect which predated the policy coverage.[18] Thus, Martech contends that pursuant to *Morrison Grain* the occurrence of the loss outside the policy period is an "exception to coverage," on which the insurer bears the burden of proof.

The answer to this conundrum, as *Banco Nacional* suggests, is that in *Morrison Grain* the insured bore the burden of proving that the loss first manifested itself during the policy period; then, the burden shifted to the insurer to prove any policy exclusion, such as an inherent vice or defect which may have caused the loss. Under such a construction, Martech's claim founders. Martech did not present competent evidence to the district court that any of its losses were first manifested during the period covered by either of the insurance policies.

Martech contends that the district court imposed too heavy an evidentiary burden at the summary judgment stage. Now choosing to rely on *Banco Nacional,* Martech contends that it is not required "to prove the exact cause of the loss or the precise time during the policy period at which the loss occurred."[19] Instead, Martech contends that its burden is satisfied with evidence that the losses, more likely than not, occurred within the policy period. The court in *Banco Nacional* required more than that, however. The footnote Martech cites continues, "[w]e hold only that the insured must show that a loss did occur at some time within the policy period, and that the jury may not engage in speculation in concluding that a loss occurred within that period."[20]

---

[18]"Insurer argues that the burden was on Morrison of proving that the event producing the loss of property occurred while the insurance policy was in force. While it is true that an insurer is ordinarily not liable for inherent vices or defects of goods existing prior to the time of coverage, we deem this to be an exception to coverage the burden of which properly lies with the insurer under an "all risks' policy." 632 F.2d at 431 (citations omitted).

In *Morrison Grain,* however, the shipment of goods was covered by a special policy. The insured had the initial burden of showing that the cargo was in good condition when the policy attached and damaged at the time it was unloaded. Because the policy covered a discrete shipment of goods the questions regarding the time of loss are different from those presented in the instant case.

[19]681 F.2d at 1340 n. 5.

[20]Id.

Relying on the following, Martech suggests that it has demonstrated that there are genuine issues of material fact regarding whether its losses occurred within the policy period: (1) in February 1987, during the policy period, it received information that the No. 2 SAT System had suffered losses but no information that other equipment was damaged; (2) in January 1988 it received additional unconfirmed information that other equipment was damaged; and (3) the rumors of earlier damage were confirmed when the equipment was returned to the United States and inspected in early 1989. Martech's evidence establishes only that Martech does not know when its losses occurred. This evidence does not preclude the possibility that the No. 2 SAT System was damaged before April 24, 1986, when the first policy came into effect, or that the remaining equipment was damaged after April 24, 1988, when the second policy expired. Proof that the claimed losses occurred during the policy period is an essential element of Martech's coverage claim on which it bears the burden of proof. Unconfirmed rumors of loss are insufficient to satisfy that burden. Accordingly, summary judgment in favor of the insurance companies was proper.[21]

### The Third-Party Claim

The district court granted summary judgment for TTP, reasoning as follows:

> Barbara did nothing wrong. He could not notify the Plaintiffs of the claim until he had more details and he asked Tisdale to provide him with this information. It was not unreasonable for Barbara to say that he could not file a proof of claim until more data were available.

We may affirm a summary judgment on any legally sufficient ground, even if not relied upon by the district court.[22] Summary judgment in favor of TTP may be considered derivative of the summary judgment in favor of the insurance companies. Because Martech could not prove that the losses occurred within the policy period, TTP's alleged untimely filing of notice could not have caused Martech harm. Summary judgment in favor of TTP also was proper.

II. *Rule 60(b) Relief*

The decision to grant or deny 60(b) relief lies in the sound discretion of the district court and

---

[21]Because we determine that Martech failed to satisfy its initial burden of proving a loss within the policy period, we need not reach the arguments regarding the policy exclusions invoked by the insurance companies.

[22]*Texas Refrigeration Supply, Inc. v. FDIC,* 953 F.2d 975 (5th Cir.1992).

will be reversed only for an abuse of that discretion.[23]   To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information[24] and (2) "the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment."[25]

Martech contends that the district court should have granted 60(b) relief because it came forward with newly discovered evidence that tended to establish that the losses occurred during the policy period.  In particular, Martech located the technician who inspected the ROV Scorpio in 1987 who reportedly confirmed that the Scorpio was in working order with a complete inventory of equipment at that time.  Testimony that the ROV Scorpio was in working order in 1987 does not prove the date that it was damaged.  In fact, the loss to the ROV Scorpio was not affirmatively demonstrated until the unit was sold in Brazil in October 1988.  At that time Martech had to reduce the sale price by $15,000 because two cameras were missing from the equipment.

Martech also recounted its discovery that Reider Niemi, a former Martech boardmember, went to Brazil in April and June of 1988.  Niemi is said to have personal knowledge and photographs of the extent of the equipment damage, but refuses to furnish this information unless he is paid an extortionate "bonus."[26]  In addition, the president of Aquaservice, Klaus Augl, indicated that he had documents and maintenance records which would indicate the timing of the various losses.  Augl, however, also refused to produce the documents unless Martech agreed to pay him $15,000.

Martech's "new evidence" is neither competent nor likely to have produced a different result. It consists primarily of accounts of documents and testimony which might provide answers, if only they were available.  Martech presented affidavits attesting to its search for evidence and speculation

---

[23]*Brown v. Petrolite Corp.,* 965 F.2d 38 (5th Cir.1992).

[24]Relief from a judgment may be available if a party finds "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2).

[25]*Brown,* 965 F.2d at 50 (*citing Resolution Trust Corp. v. Kemp,* 951 F.2d 657, 664 (5th Cir.1992), further citations omitted).

[26]Niemi's testimony is all the more difficult to obtain because he now resides in Oslo, Norway.

about what evidence Augl and Niemi might produce—if they opted to cooperate. Although this "evidence" conceivably could demonstrate when the losses occurred, it is now no more than mere speculation that it would prove that the losses occurred during the policy period. The district court's refusal to reopen the case to consider such "evidence" was not an abuse of its discretion.

Finding neither error nor abuse of discretion we AFFIRM the district court in all respects.