CONTINENTAL CASUALTY COMPANY, Plaintiff–Appellee,

v.

ANDERSON EXCAVATING & WRECKING COMPANY, Defendant–Appellant.

No. 98–3730.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1999.

Decided Aug. 27, 1999.

Michael A. Snyder (argued), Ray, Robinson, Carle, Davies & Snyder, Chicago, IL, James Mercante, Kroll & Tract, New York, NY, for Plaintiff–Appellee.

Theodore R. Boecker, Jr. (argued), Sherrets & Associates, Omaha, NE, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

The Continental insurance company brought suit in the Northern District of Illinois under 28 U.S.C. § 1333 (admiralty) against two of its insureds, McDonough Marine Service and Anderson Excavating & Wrecking Company, seeking a declaration that it was not liable to them on their policies. Anderson had been hired by the Army Corps of Engineers to demolish the wall of a concrete lock in the Mississippi River and remove the debris. It chartered barges from McDonough. The charter agreement required it both to indemnify McDonough for any damage to the barges while they were in Anderson's custody and to procure an insurance policy from Continental against such damage, which it did. The policy named both McDonough and Anderson as insureds. Sure enough, the barges were damaged during the loading of the debris by Anderson. McDonough sued Anderson in the Southern District of Illinois under the indemnification provision, basing federal jurisdiction on 28 U.S.C. § 1331 (federal question) by virtue of the Miller Act, 40 U.S.C. §§ 270a *et seq.*, which governs certain federal contracts (remember that Anderson was working for the Corps of Engineers). Continental's suit was consolidated with McDonough's in the Southern District. McDonough and Anderson settled their suit. McDonough then assigned any insurance claim it might have against Continental to Anderson, and the district judge substituted Anderson for McDonough in Continental's suit. This gave Anderson two roles in that suit: defendant in its own right; defendant in the capacity of McDonough's assignee. Against Anderson in its second role, Continental seeks a declaration of nonliability as to McDonough, and that claim remains pending in the district court.

After a hearing on the parties' cross-motions for summary judgment, the district judge entered a Rule 54(b) judgment in Continental's favor against Anderson in Anderson's own capacity (that is, Anderson in its first role). The judgment is not further described in the judgment order except for the statement that the complaint is being dismissed with prejudice pursuant to a minute order filed on September 25, 1998. The statement is mysterious. The minute order makes no reference to dismissing the complaint, and there is a stark inconsistency between awarding judgment to a party and dismissing its complaint—especially since the complaint also made an unrelated claim against a different party (McDonough). We will not repeat what we said in *Health Cost Controls of Illinois, Inc. v. Washing-*

*ton,* 187 F.3d 703, 707–08 (7th Cir.1999), about the importance of a clear, definite, and specific judgment (here as there missing), or about the duty (here as there unfulfilled) of the parties' lawyers to take steps to see to the entry of a proper judgment. Here, as also in *Health Cost Controls, supra,* at 708, and in our even more recent opinion in *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.,* 190 F.3d 775, 776–77 (7th Cir.1999), the normal consequence of dispensing with that duty—a dismissal of the appeal for want of a final appealable judgment—is averted by the happenstance of the parties' agreeing on what the judgment is: a judgment that Anderson has no right to coverage from Continental.

■ McDonough's assignment of its claim to Anderson also has potential jurisdictional implications. Anderson sustained no loss different from McDonough. It indemnified McDonough for that loss in the settlement of McDonough's suit for indemnification, receiving in return a chance to recoup the amount of the indemnity by enforcing McDonough's insurance claim against Continental. If the claim is a good one, Anderson will be made whole and will have nothing to gain from winning this appeal. So unless Continental has some defense against McDonough's insurance claim, Anderson's appeal is moot. We are told, however, and have no reason to doubt, that Continental may well have good defenses against McDonough, just as, the district court ruled, it has a good defense against Anderson. In that event, if Anderson loses this appeal it will be out the money that it paid McDonough in settlement of the latter's indemnity claim against it.

■ This shows that Anderson has a probability of gaining a tangible benefit from winning this appeal, and nothing more is necessary to show that the appeal is not moot, that is, that the appellant continues to have a sufficient stake in the litigation to give him standing to pursue it.

E.g., *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *Walters v. Edgar,* 163 F.3d 430, 434 (7th Cir.1998); *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1242 (7th Cir.1991); *United States v. Articles of Drug,* 818 F.2d 569, 573–74 (7th Cir.1987). But it does not show that the entry of a Rule 54(b) judgment (final, and hence appealable without having to wait for the entire litigation to wind up) was proper. Such a judgment is proper only if it resolves either all disputes with one party, *Lawyers Title Ins. Corp. v. Dearborn Title Corp.,* 118 F.3d 1157, 1162 (7th Cir.1997); *Curtis–Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.,* 43 F.3d 1119, 1121 (7th Cir.1994); *Horn v. Transcon Lines, Inc.,* 898 F.2d 589, 593 (7th Cir.1990); *Credit Francais Int'l, S.A. v. Bio–Vita, Ltd.,* 78 F.3d 698, 706 (1st Cir.1996), or a separate claim between parties remaining in the suit in the district court, "separate" meaning having minimal factual overlap. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); *Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd.,* 154 F.3d 404, 407 (7th Cir.1998); *Newman v. Indiana,* 129 F.3d 937, 940 (7th Cir.1997); *Kersey v. Dennison Mfg. Co.,* 3 F.3d 482, 487–88 (1st Cir.1993).

■ But before delving further into the mysteries of Rule 54(b), we must consider whether it is applicable to this case. Section 1292(a)(3) of the Judicial Code provides that "interlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed" are appealable. See, e.g., *Brotherhood Shipping Co. v. St. Paul Fire & Marine Ins. Co.,* 985 F.2d 323, 324–25 (7th Cir.1993). If this section is applicable, it is immaterial whether the requirements of Rule 54(b) are satisfied. That rule authorizes the entry of a final judgment appealable under 28 U.S.C. § 1291; section 1292(a)(3) authorizes the appeal of nonfinal judgments. After Anderson and McDonough settled

their suit, the only suit remaining in the district court was Continental's suit for a declaration of rights under a standard marine insurance policy covering damage to barges employed in a project in the Mississippi River, which is part of the navigable waters of the United States. A suit on such a policy is comfortably within the admiralty jurisdiction, *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 601–03 (1st Cir. 1997); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1198 (5th Cir.1993), which extends to all contracts that "have reference to maritime service or maritime transactions." *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919); David P. Currie, *Federal Jurisdiction in a Nutshell* 111 (3d ed.1990). Section 1292(a)(3) does not authorize the appeal of *all* interlocutory orders in admiralty cases; reflecting its origin in the admiralty practice of trying liability and damages separately (long before such bifurcated procedure became common in nonadmiralty cases as well), the statute limits the right of appeal to interlocutory orders that finally determine substantive rights, as distinct from merely procedural, managerial, preliminary, or tentative orders. *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 668–71 (7th Cir.1999) (per curiam); *Cement Division v. City of Milwaukee*, 915 F.2d 1154, 1158 (7th Cir.1990); *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1063–64 (1st Cir.1987). The order sought to be appealed in this case, however, is a final, definitive (so far as the district court was concerned, at any rate) declaration of rights and liabilities— just the kind of order covered by section 1292(a)(3).

■ When an admiralty case is also within federal jurisdiction on another basis, such as diversity, the parties are not entitled to invoke any of the special procedures or remedies of admiralty, including the right of interlocutory appeal under section 1292(a)(3), unless the plaintiff has expressly invoked the admiralty jurisdiction under Fed.R.Civ.P. 9(h) so that the parties and the court are clear about what procedures will apply. E.g., *Wingerter v. Chester Quarry Co., supra,* at 663–66; *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1547 (5th Cir.1991); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1313 (2d ed.1990). Continental did not invoke admiralty jurisdiction under the rule, but as the only basis for jurisdiction that Continental pleaded was admiralty it had no occasion to do so. The fact that the suit was consolidated with McDonough's nonadmiralty suit against Anderson in the Southern District of Illinois did not alter the jurisdictional basis of Continental's claim. And we shall not treat the fact that until the appeal the parties accepted the characterization of the district judge's order as a Rule 54(b) order, which would be out of order in an admiralty case, as somehow a renunciation of admiralty jurisdiction, which would leave no jurisdictional basis for Continental's suit.

■ For future reference, however, we consider whether, were Rule 54(b) applicable, it would allow us to consider Anderson's appeal. An initial question would be whether Anderson is two parties or one for purposes of the rule since it is both suing (and defending) in its own right and as McDonough's assignee and in its second capacity remains in the district court. We cannot find any controlling authority, although our *Sandwiches, Inc. v. Wendy's Int'l, Inc.*, 822 F.2d 707 (7th Cir. 1987), leans against the two-parties alternative, while *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16– 17 (2d Cir.1997), leans in favor of it (though obscurely—the court may have confused multiple parties with multiple claims). There is no merit to the two-parties approach. The purpose of Rule

54(b) in allowing the entry of judgment for or against a party in a multiparty case even though the party's claim overlaps the claims of other parties is to enable a party (and its adversaries) to determine at the earliest possible opportunity whether it is securely out of the litigation and therefore can stop worrying about and preparing for further proceedings in it. *Lawyers Title Ins. Corp. v. Dearborn Title Corp., supra*, 118 F.3d at 1162; *National Metalcrafters v. McNeil,* 784 F.2d 817, 821 (7th Cir. 1986); Note of Advisory Comm. on 1961 Amendment to Rule 54(b). The purpose is tenuously if at all in play if the party knows that it is still in the litigation, albeit perhaps in a more limited role.

■ The question would then be whether Anderson's insurance claim is sufficiently distinct factually from McDonough's claim (the claim that remains in the district court, with Anderson substituted for McDonough) to be deemed separate under the separate-claims, as distinct from separate-parties, head of Rule 54(b). We have not been given enough information about McDonough's claim to be able to determine the degree of overlap between it and Anderson's, though it is no doubt considerable. But that does not matter because assignment of McDonough's claim to Anderson, as a result of which Anderson has a claim remaining in the district court, was made *after* the Rule 54(b) judgment was entered, and as a general rule jurisdiction, whether original, *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), or appellate, *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir.1991); *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir.1991), depends on the situation as it existed when the pleading in question was filed.

There are, it is true, exceptions. A case can become moot at any time, and destroy the court's jurisdiction. And defects in jurisdiction can be cured by later developments in a case. *Newman–Green* allowed a lack, ordinarily fatal, of complete diversity to be cured by dropping a party at the appellate level. For other examples, see *Health Cost Controls of Illinois, Inc. v. Washington, supra*, at 707–08; *JTC Petroleum Co. v. Piasa Motor Fuels, Inc., supra*, at 776–77; *General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 651 (3d Cir.1995); *J.D. Pharmaceutical Distributors, Inc. v. Save–On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1208 (11th Cir.1990); *O'Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88, 92 (3d Cir.1989); *Merchants & Planters Bank v. Smith*, 516 F.2d 355, 356 n. 3 (8th Cir.1975) (per curiam). But it does not follow that a defect that creeps into the case after it is filed, and does not deprive the court of standing (as mootness does) and thus of its constitutional power to decide the case, deprives the court of jurisdiction. It is one thing to allow a case that may already have been litigated to judgment to remain in the court system, rather than bouncing it back to another court system to start over, and another to place parties in a situation where they "could never be sure they were before a tribunal ... that could render a judgment in their case—the jurisdictional rug might be pulled out from under them at any time." *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1508 (7th Cir.1991).

■ But even though the district court would have had the power to enter a Rule 54(b) order (were this not an admiralty case), power is not duty. The rule says that "the court may direct the entry of a final judgment" upon the satisfaction of the conditions set forth in the rule, not that he must do so. The entry of such an order permits piecemeal appeal, which is disfavored in the federal system. *Curtiss–Wright Corp. v. General Electric Co., supra*, 446 U.S. at 8, 100 S.Ct. 1460. The judge is required to make a discretionary judgment, balancing the advantage of allowing an immediate appeal against the advantage of delaying the appeal until the pending claims can be resolved so that all can be decided in a single appeal at a later time. *Id.* at 8–9, 100 S.Ct. 1460; *Cooper*

Power Systems, Inc. v. Union Carbide Chemicals & Plastics Co., 123 F.3d 675, 679 n. 1 (7th Cir.1997); L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 86 (2d Cir.1998). The district judge gave no indication that he made such a judgment before deciding to enter the Rule 54(b) order in this case, and no reasons spring out of the record to suggest that such a judgment was inevitable. All this is of no moment in this case, however, since 28 U.S.C. § 1292(a)(3) entitled Anderson to appeal as a matter of right.

 So we have jurisdiction; but from the fact that this is an admiralty case it does not automatically follow that admiralty law, a body of judge-made legal doctrines tailored to maritime disputes, should govern the substantive issues. A federal court sitting in admiralty can, by analogy to the practice of the federal courts in regard to federal common law (which is to say nonadmiralty federal judge-made law), borrow the law of a state or a foreign country to resolve a dispute that had come into court under the admiralty jurisdiction, especially when dealing with a subject traditionally regulated by the states, such as insurance (including marine insurance). Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313–14, 75 S.Ct. 368, 99 L.Ed. 337 (1955); New Hampshire Ins. Co. v. Martech USA, Inc., supra, 993 F.2d at 1198. But because the admiralty jurisdiction is aimed at providing the shipping industry, which is international, not only with a neutral forum but also, so far as possible, with a uniform body of law, a federal court before considering whether to borrow a state law to resolve an admiralty dispute must ask whether there is admiralty law on the issue and if so it must apply that law and if not it must decide whether the interest in uniformity should trump the state's regulatory interest and expertise. Wilburn Boat Co. v. Fireman's Fund Ins. Co., supra, 348 U.S. at 313–14, 75 S.Ct. 368; AASMA v. American Steamship Owners Mutual Protection & Indemnity Ass'n, Inc., 95 F.3d 400, 403–04 (6th

Cir.1996); Thanh Long Partnership v. Highlands Ins. Co., 32 F.3d 189, 193–94 (5th Cir.1994). There is, as we're about to see, admiralty law on the issue in this case and if there were not we might be inclined to create some. Anderson's pitch for our applying the law of Nebraska, where Anderson has its headquarters and received and signed the insurance contract, is unimpressive. Nebraska is not known as a maritime state, or for that matter a center of the insurance industry, and the contract in issue has as we are about to see distinct maritime features and is best interpreted according to uniform interpretive principles shaped to those features rather than according to the happenstance of where the insured's headquarters are located. The application of admiralty law cannot come as a surprise to Anderson, which does maritime work—especially since the project out of which the suit arises was performed in the Mississippi River in southern Illinois, quite a distance from Nebraska.

This brings us at last to the facts. The debris from the lock wall that was to be loaded onto the barges consisted of large chunks of concrete weighing as much as ten tons. Barges built to carry such heavy objects are called "rock" barges, in contrast to the lighter "deck" barges. Anderson tried to get rock barges from McDonough, but none was available and it settled for deck barges, which over the course of the seven months of the project sustained heavy damage as a consequence of the pounding they received from the huge chunks of concrete, many of which were dropped on to the decks of the barges from a height of one or two feet rather than being lowered gently onto them.

 The policy contained a clause that is standard in contracts of marine insurance, called an "Inchmaree Clause" after the ship in Thames & Mersey Marine Ins. Co. v. Hamilton, Fraser & Co., 12 App. Cas. 484 (H.L.1887); see Francis L. Tetrault, "The Hull Policy: The 'In-

chmaree' Clause," 41 *Tulane L.Rev.* 325 (1967). The interpretation of this clause is governed by federal admiralty law. *Thanh Long Partnership v. Highlands Ins. Co., supra,* 32 F.3d at 193–94; *5801 Associates, Ltd. v. Continental Ins. Co.,* 983 F.2d 662, 666 (5th Cir.1993) (per curiam) (dictum). The clause insured Anderson against losses (including, the parties appear to agree, liability to the owner of the barges, McDonough) of "accidents in loading . . . cargo," provided, however, that the loss "has not resulted from want of due diligence by the . . . owners or managers of the vessel." The district court, in a very short and not altogether clear oral opinion, held that what happened to the barges was not an accident, because there was no fortuity, the barges having been deliberately loaded with the chunks of concrete that damaged them. This was not a satisfactory analysis. Most accidents occur as a consequence of deliberate activity. It is when the *injury* is deliberate that it is called nonaccidental, e.g., *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1097 (7th Cir.1994); *Red Ball Leasing, Inc. v. Hartford Accident & Indemnity Co.,* 915 F.2d 306, 311–12 (7th Cir.1990); *Winchester v. Prudential Life Ins. Co.,* 975 F.2d 1479, 1487 (10th Cir.1992), or in admiralty lingo not "fortuitous." E.g., *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 307 (2d Cir.1987). If Anderson knew that the concrete was going to damage the barges, or after the loading began perceived that they were being damaged, yet went on with it, then the damage to the barges was not accidental and the Inchmaree Clause, or at least the "accidents in loading . . . cargo" provision of it, and we needn't consider any others, did not cover it. There was some evidence to support such an inference, and some hints in the district court's opinion that the judge did infer it. But if this were the only defense to coverage we would have to remand, at a minimum for a clarification of the opinion and at a maximum for a trial, since a judge is not permitted to weigh evidence in a summary judgment proceeding.

But Continental has an alternative ground for affirmance; actually it has several, but one is clearly sound and so we limit our discussion to it. The exclusion in the Inchmaree Clause for losses caused by "want of due diligence by the . . . owners or managers of the vessel" fits this case to a T. The damage to the barges resulted from the choice to use deck barges rather than rock barges, a choice that however innocent was made by Anderson and, the uncontradicted evidence shows, bespoke a conspicuous lack of diligence. Mr. Anderson testified at his deposition that he warned his foreman that "you shouldn't be using anything other than rock barges to haul those big chunks of concrete." Later he relented and told the foreman to "make sure he had plenty of sand and load them [the deck barges] lighter than you normally would with a rock barge." Yet he had never tried this mode of protecting a deck barge before. He had used sand to protect rock barges, and he hoped that it would be equally efficacious with deck barges, but he had no solid basis for this hope. To go ahead with the lighter vessel in these circumstances—knowing of the danger, and only taking a precaution that he had no basis for confidently believing would ward off the danger—demonstrated a lack of diligence and so triggered the exclusion in the Inchmaree Clause. So clear is this that no purpose would be served by remanding the case for better findings by the district court.

AFFIRMED.