# In the
# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 04-1537

R. D. LOTTIE,

*Plaintiff-Appellant,*

v.

WEST AMERICAN INSURANCE
COMPANY, of the Ohio Casualty
Group of Insurance Companies,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 01 C 582—**William C. Lee,** *Judge.*

—————————

ARGUED DECEMBER 2, 2004—DECIDED MAY 26, 2005

—————————

Before BAUER, POSNER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* R. D. Lottie sued his insurer for breach of contract, bad faith and race discrimination. Because there is a significant evidentiary overlap between the claims on which final judgment was granted (the bad faith claim and the race discrimination claim) and a claim that remains pending before the district court (the breach of contract claim), we vacate and remand.

## I.

R. D. Lottie owns a number of rental properties in Indiana, many of which are leased through a federally subsidized housing program. West American provides property insurance for Lottie's buildings. To be eligible for the federal subsidy, the housing units must pass an inspection before a new tenant moves in. Lottie lives in California but has a brother and a sister-in-law living in Indiana who manage his properties for him, cleaning and repairing the units as well as preparing them for inspections on an "as needed" basis. Lottie's claims against West American arise from two houses he owned in South Bend, Indiana, both of which sustained damage during arson-related fires. The first arson loss occurred on May 16, 2000 at a house located at 226 Birdsell Street, South Bend. The house was vacant at the time of the fire and there is some dispute over when the tenant had moved out. The date of the vacancy turns out to be important because the insurance policy did not cover certain losses for properties that had been vacant for more than thirty days. The tenant's federal housing subsidy ended on March 31, 2000 and Lottie originally told the insurance adjuster that the tenant vacated the property on April 2, 2000. Lottie's brother was in the house on the day of the fire, painting the interior. He had brought gasoline with him to clean his paint brushes and he left the gasoline in the house when he stepped out later in the day. Someone used the gasoline to set a fire in the house, which the fire department promptly determined was an arson fire. A West American insurance adjuster investigated the claim and determined that the property had been vacant for more than thirty days at the time of the fire. West American denied the claim in June 2000 under a policy provision excluding coverage for malicious mischief and vandalism to properties that had been vacant more than thirty days.

A few months later, there was another arson fire at another property owned by Lottie, this one at 1412 Linden Avenue in South Bend. Lottie's brother and sister-in-law

managed this property as well, and had a key to the Linden Avenue house. In this case, the tenant had vacated the property only a day or two before the fire. There was no sign of forced entry and the South Bend Fire Department characterized this arson fire as a "remodeling fire," that is, a fire set to gain insurance proceeds to fund remodeling for a badly dilapidated house. An independent "cause and origin" investigator hired by West American also determined that the Linden Avenue fire was intentionally set and the company then assigned another investigator to look into both the Birdsell Street and Linden Avenue fires. That investigator took statements from Lottie and his brother, performed background checks, and examined documents related to the fires. The investigator concluded that there was evidence demonstrating that Lottie's brother may have set the fires and may have been acting on Lottie's behalf in doing so.

The policy at issue provides that any suit against the insurer must be brought within one year from the date of the loss. Because the investigation into the fires continued for some time, the one-year limitations period pressed Lottie to act. After West American granted Lottie one ninety-day extension on this limitations period, Lottie decided to file suit. At the time the suit was filed, West American had not finally determined the resolution of the Linden Avenue claim and had not, in any case, formally denied the claim. Count I is a claim for breach of the insurance contract on each property. Count II incorporated the breach of contract claim and additionally stated that West American unreasonably, deliberately, oppressively and maliciously delayed the processing, handling and resolution of Lottie's claims, in violation of the doctrine of good faith and fair dealing and in violation of its duty of due diligence. Count III contended that West American's actions against Lottie (who is African-American) were racially motivated and constituted a racially discriminatory practice. In particular, Lottie

claimed that West American's breach of contract and bad faith actions were racially motivated. Lottie requested compensatory and punitive damages for all three counts.

In the district court, West American moved for partial summary judgment on the bad faith and race discrimination claims as well as for judgment on any claims for punitive damages on all three counts. The district court found that the undisputed facts demonstrated that West American handled the claims reasonably under the circumstances. According to the district court, the insurer had a reasonable basis to deny the Birdsell Street claim and to continue to investigate the Linden Avenue claim. The parties disputed the date the tenant vacated the Birdsell Street property. Lottie himself had told the insurer that the tenant vacated on April 2, 2000, and the housing authority set the date at March 31, 2000. Neighbors set the date somewhat later, claiming they saw a moving van at the property on April 28, 2000, which would mean the property was vacant less than thirty days before the fire. In any case, the court found that the insurer acted reasonably in taking the insured at his own word and concluding the property was vacant more than thirty days. The court also found that the insurer reasonably characterized an arson fire as "vandalism and malicious mischief" and thus reasonably excluded the Birdsell Street loss from coverage under the policy. With the bad faith claims out of the picture, the court further found that Lottie was not entitled to punitive damages for his contract claim under Indiana law.

On the race discrimination claim, the district court noted that Lottie provided no direct evidence of race discrimination and failed to make out a *prima facie* case under the *McDonnell Douglas* burden-shifting method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In particular, Lottie failed to identify any persons outside the protected class who were treated more favorably than Lottie. The court therefore entered judgment on behalf of West American

and against Lottie on the bad faith and race discrimination claims as well as Lottie's claims for punitive damages in all three counts. Lottie moved for reconsideration of the judgment on the bad faith and punitive damages claims, and the court reaffirmed its earlier ruling.

West American then moved for entry of partial final judgment under Federal Rule of Civil Procedure 54(b). The insurer argued that these claims were separate and distinct from the remaining breach of contract claim. West American contended that permitting appellate review of those claims immediately would eliminate the possibility of having to conduct two trials. The company did not wish to accept any risk that the court's partial summary judgment rulings would be overturned on appeal, forcing a second trial. The company also sought final judgment on the ruling to further facilitate settlement discussions. Lottie opposed the entry of partial final judgment, arguing that the claims were not separate and distinct for Rule 54(b) purposes. The court found that each claim had a separate measure of recovery and each could exist as stand-alone litigation. Thus, the court found it was permissible to enter a Rule 54(b) final judgment. The court then considered whether there was any just reason for delay and concluded there was none. The court therefore entered final judgment on the partial summary judgment previously entered. Lottie appeals.

## II.

In his appeal, Lottie contests whether the Rule 54(b) motion was appropriately granted and also disputes the merits of the district court's decision. Because we are resolving the appeal on the Rule 54(b) issue, we will not address the merits of the district court's partial summary judgment, and no part of our opinion should be construed as resolving the merits of the case. "Rule 54(b) permits entry of a partial final judgment only when all of one party's

claims or rights have been fully adjudicated, or when a distinct claim has been fully resolved with respect to all parties." *Factory Mut. Ins. Co. v. Bobst Group USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004). *See also Continental Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 516 (7th Cir. 1999).

Here, the district court entered a Rule 54(b) partial final judgment on what it characterized as distinct claims, the bad faith claim and the race discrimination claim. We have insisted that Rule 54(b) be employed only when the subjects of the partial judgment do not overlap with those remaining in the district court. *Factory Mut.*, 392 F.3d at 924. The breach of contract claim is the only claim remaining in the district court at this point in the proceedings. We must therefore determine whether the bad faith and race discrimination claims overlap as a practical matter with the remaining breach of contract claim. *See Newman v. State of Indiana*, 129 F.3d 937, 940 (7th Cir. 1997) (whether the retained claims are separate from the dismissed ones depends on whether in the practical sense there is minimal factual overlap). Rule 54(b) is not intended to provide an option to the district court to certify issues for interlocutory appeal. *Factory Mutual*, 392 F.3d at 924. Rather, Rule 54(b) allows appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court, where "separate" means having minimal factual overlap. *Continental Cas.*, 189 F.3d at 516. *See also Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 515 (7th Cir. 2002), *cert. denied*, 537 U.S. 1110 (2003) ("separate" in the Rule 54(b) context does not mean arising under a different statute or legal doctrine but rather means involving different facts); *Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1434 (7th Cir. 1992) (if there is a great deal of factual or legal overlap between counts, they are considered the same claim for Rule 54(b) purposes).

> The test for separate claims under the rule is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir. 1997). *See also Ty*, 292 F.3d at 516 (if the court did not require that claims be separate in the sense of involving different facts, the appellate court would be forced to go over the same ground a second time when the judgment terminating the entire case was appealed). Thus, different theories of relief or different legal characterizations of the same facts are not separate claims for Rule 54(b) purposes. *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1402 (7th Cir. 1992).

We turn then to the facts of the claims on which final judgment has been granted and the claim that remains before the district court. Lottie has framed his case in three parts. He claims first that in denying his insurance claims, West American has breached the insurance contract. In particular, Lottie claims that West American breached the insurance contract by including arson in its definition of malicious mischief and vandalism, thereby altering the terms of the contract and then denying the Birdsell claim on that basis. He complains that failing to pay on both the Birdsell Street and Linden Avenue claims breached the insurance contract. Lottie then claims that characterizing arson as malicious mischief and vandalism in order to deny his claim was so egregious that it constituted bad faith. He also contends that the delay in handling the Linden Avenue claim constituted bad faith. Finally, Lottie claims that West American breached the contract and engaged in this bad faith conduct because he is African-American. His race discrimination claim, as he has framed it, is therefore entirely dependent on the other two claims.

At oral argument, we suggested that West American's strategy was unusual. The company asks us to decide first if a breach of contract was so egregious that it equaled bad faith and then, presumably in a second appeal, decide whether there was a breach at all. It is equally unusual to decide whether West American was motivated by race when it breached a contract and engaged in bad faith before any court determines whether West American ever breached the contract or engaged in bad faith at all. In each instance, we would be considering whether West American's actions amounted to a breach of contract, and in the latter two counts we would also be considering West American's motive in taking the actions that Lottie claims it took. Although the evidence for these three claims is not identical, there is a significant evidentiary overlap that renders the Rule 54(b) judgment inappropriate. We would be treading the same evidentiary ground in the second appeal from the judgment on the contract claim that we would confront here if we were to consider the merits of Lottie's appeal of the partial summary judgment. Moreover, we might never have to consider at all the bad faith and race discrimination claims if the contract claim is resolved in favor of West American. There would be no reason to consider whether the insurer's breach was so egregious that it amounted to bad faith if there was no breach. Likewise, there would be no reason to consider whether West American breached the contract on account of race if West American did not in fact breach the contract. *See Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir. 1990) (the possibility that developments in the litigation may moot a claim suggests that appellate resolution be deferred).

West American's characterization of the case brings the problem into sharp focus. According to West American, whether its determination of insurance coverage was *reasonable* goes to the issue of bad faith; whether its determination was *correct* goes to the issue of breach of contract.

West American is trying to use Rule 54(b) to sew up the district court's ruling on reasonableness before the jury ever hears the evidence on the correctness of the decision. West American may fear (as any defendant might) that the evidence might show a clear breach of contract, one that is outrageous and for which there is no excuse. Lottie could then petition the district court to reconsider its original ruling on bad faith. West American fears, in other words, that because the breach of contract and bad faith claims are so intertwined by the overlap of evidence, that if the company does not appeal now and resolve the bad faith claim, the district court might reconsider its decision. The risk to the defendant of proceeding to trial after a partial summary judgment has been entered is not a reason to grant a Rule 54(b) judgment. West American's rationale for appealing now is actually a powerful argument to have the district court decide the entire case in the first instance so that the parties can take one appeal. To avoid time-consuming duplicative appeals, the norm in litigation is one appeal per case. *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1218 (7th Cir. 1990).

This appeal puts at least two carts before the horse. Under the circumstances, a Rule 54(b) partial final judgment was inappropriate. We vacate and remand so that the district court may resolve the case in its entirety before either party may take an appeal.

VACATED AND REMANDED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-26-05