**Juan R. MEZA, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

No. CIV.A. L–99–58.

United States District Court,
S.D. Texas,
Laredo Division.

April 20, 2001.

**574**

Gabriel Perales, Jr., Attorney at Law, San Antonio, TX, for Plaintiff.

William Brad Howard, Office of U.S. Attorney, Houston, TX, for Defendant.

### MEMORANDUM AND ORDER

ELLISON, District Judge.

Pending before the Court is Plaintiff's Motion for Relief from Judgment, pursuant to Rule 60 of the Federal Rules of Civil Procedure. Because the Motion is untimely, and because it fails to identify new evidence that would support rehearing of the Court's prior Order, Plaintiff's Motion is **DENIED.**[1]

### BACKGROUND

Following a decision by the Commissioner of Social Security denying him disability benefits, Plaintiff Juan R. Meza sought review in this Court pursuant to 42 U.S.C. § 405(g). On April 7, 2000, the Court entered an order granting the Commissioner's Motion for Summary Judgment. More than one year later, Meza seeks to reopen the Court's Order on the grounds of newly discovered evidence. Specifically, Meza alleges that ALJ Peter F. Belli maintained an "inactive" bar membership at the time of Meza's 1998 hearing. In Meza's view, the ALJ's inactive bar membership renders invalid the Commissioner's decision to deny benefits, and consequently requires the Court to render judgment in Meza's favor, or alternatively, to

---

1. Plaintiff's Amended Motion is also denied as untimely and as lacking in merit.

remand to the Commission for further proceedings.

## DISCUSSION

Meza's Motion fails for two reasons. First, he has not filed the Motion within the strict time period set forth by Rule 60(b). Second, and substantively, Meza fails to set forth a ground on which the Court should grant relief. The ALJ's inactive bar membership, even if it may give rise to disciplinary proceedings before the Commissioner, is not an appropriate basis for overturning the Commissioner's decision, and is therefore not "material and controlling" for purposes of granting relief under Rule 60(b).

### A. The Instant Motion was not Timely Filed

#### 1. The Instant Motion was Required to be Filed by April 7, 2001

■ Rule 60(b) of the Federal Rules of Civil Procedure provides, *inter alia*, that "the court may relieve a party ... from a final judgment, order, or proceeding" on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b). A motion for relief under Rule 60(b) "*shall* be made ... not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b) (emphasis added).[2] Rules 58 and 79 help clarify when this one-year time period commences. Rule 58 states that "[a] judgment is effective only when [set forth on a separate document] and when entered as provided in Rule 79(a)." Fed. R.Civ.P. 58. Rule 79(a) provides that "[t]he entry of an order or judgment shall show the date the entry is made." Fed.R.Civ.P. 79(a).

In the instant case, the Court signed the underlying Order on April 6, 2000. The Order was then docketed by the Clerk and stamped as "entered" on April 7, 2000. The Clerk's actions satisfy Rules 58 and 79(a), making the effective date of the underlying Order April 7, 2000. Applying Rule 60(b)'s

mandatory time limit, the last date for Meza to file the instant Motion was April 7, 2001.

Before considering the timeliness of the instant Motion, the Court pauses to address Meza's claim that the underlying Order was actually "entered ... on April 11, 2000." Motion for Relief ¶ 1. Meza's purported source for the April 11 date is "D# 11," or docket entry number 11. A review of the relevant docket entries indicates the following:

| 4/6/00 | 11 | MEMORANDUM AND ORDER granting [8–1] motion for summary judgment, entered. Parties notified. (signed by Judge Keith P. Ellison) (jm) [Entry date 04/07/00] |
| 4/6/00 | — | Case closed (jm) [Entry date 04/11/00] |

Nowhere does the docket suggest that the date of entry for the underlying Order was April 11, 2000. The Court acknowledges that the clerk may not have mailed notice of the Order until April 11, the date on which the Order was marked as "scanned." The lapse of time between April 7 and April 11 does not affect the time period under Rule 60(b).

One possible consequence of a four-day lapse would be to toll the period for filing a notice of appeal. *See* Fed. R.App. P. 4(a)(6) (listing the conditions under which a district court may reopen a party's time to file a notice of appeal). By definition, Rule 4 of Appellate Procedure does not apply to Motions to Reopen under Rule 60(b). Further, the purposes of the two Rules are entirely different. In civil cases, a party appealing an adverse judgment has only 30 or 60 days from the date of entry in which to file his or her notice of appeal. Fed. R.App. P. 4(a)(1). Therefore, any lapse of time between the entry of the judgment, and notice by the clerk, shortens the time for a party to decide whether to appeal, and to prepare the requisite notice. To ameliorate the harsh consequences of a shortened time frame, Rule 4(a)(6) sets forth a carefully designed procedure in which, if the clerk fails to send timely notice that judgment has been entered, the district court may reopen the time period. for filing an appeal. In the Fifth Circuit, for purposes of Rule 4, the clerk must in fact give written notice that judgment has been

---

**2.** Meza does not maintain, nor could he, that grounds (4), (5), or (6) of this Rule, to which the

one-year time limit does not apply, are relevant to the instant case.

entered. *Bass v. United States Dept. of Agric.*, 211 F.3d 959, 963 (5th Cir.2000).

Rule 60(b) contains neither a requirement of notice by the clerk nor a tolling procedure. It should not be surprising that the time for filing a Rule 60(b) Motion does not turn on the clerk's notice of the entry of judgment. Rule 60(b) does not contemplate that a party receiving an unfavorable judgment will mark his or her calendar one year from the date of notice, then use the intervening time to try and find new evidence, or some other basis for relief from judgment. *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 471 (5th Cir.1998) ("Rule 60(b), with its one-year time limit, is not simply a substitute for taking a direct appeal.") (quoting 12 W. MOORE et al., MOORE'S FEDERAL PRACTICE § 60.22[2], at 60–67 (3d ed.1998)). Because motions under this Rule are "extraordinary," courts are to grant relief only when the Rule's requirements are "strictly met." *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir.1992). Based on the text and purpose of Rule 60(b), the Court concludes that the effective date of the underlying Order is April 7, 2000, and therefore that the last date for Meza to file the instant Motion was April 7, 2001.

### 2. The Instant Motion was Filed on April 9, 2001

■ A pleading is not filed with the court until it is actually received by the clerk, or by the court. *See* Fed.R.Civ.P. 5(e); *Torras Herreria y Const., S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir.1986). When a party mails a pleading to the clerk, the Sixth Circuit has described the consequences as follows: "If mailed, the filing is accomplished only when actually received by the clerk or when placed in the clerk's post office box. *Filings reaching the clerk's office after a deadline are untimely, even if mailed before a deadline.*" *Torras Herreria*, 803 F.2d at 216 (emphasis added) (citing *Lee v. Dallas County Bd. of Educ.*, 578 F.2d 1177, 1178, 1179 (5th Cir.1978); *Wiss v. Weinberger*, 415

F.Supp. 293, 294 (E.D.Pa.1976)). Service of a motion upon a party, although effective on the date of mailing, *see* Fed.R.Civ.P. 5(b), does not constitute filing within the contemplation of Rule 5(e).

■ According to the Certificate of Service, Meza served Notice of his Motion on the Commissioner on April 3, 2001. No other date appears on the Motion until it was stamped as "filed" by the clerk on April 9, 2001. Because the instant Motion was not filed until April 9, it fails by two days to meet Rule 60(b)'s strict time limit. The Court is not permitted to enlarge the time for filing the instant Motion. Fed.R.Civ.P. 6(b); *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 827 (5th Cir.1986). Therefore the Court cannot consider the instant Motion.

### B. The Motion Fails to Allege An Adequate Ground for Relief

■ Even if Meza's Motion were timely filed, he would not be entitled to relief from the Court's judgment under Rule 60(b). Movants seeking relief on the basis of newly discovered evidence must satisfy two requirements. First, they must "exercise[ ] due diligence in obtaining the information." *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir.1993). Second, they must show that "the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Brown v. Petrolite Corp.*, 965 F.2d 38, 50 (5th Cir.1992).

■ Assuming, *arguendo*, that Meza exercised due diligence in obtaining the information regarding the ALJ's bar membership,[3] there is no basis for holding that this evidence is material and controlling, and that it would have warranted a new trial if discovered before. Although the ALJ's inactive bar membership could potentially be relevant to disciplinary proceedings before the Commissioner, it is insufficient to reopen the Court's

---

3. The Court notes that counsel for Meza had raised this identical issue, albeit in a different case, nearly a month before the instant Motion was filed. *See* Post–Hearing Brief, *Garza v. Halter*, No. L–00–CV–13 (S.D.Tex. Mar. 8, 2001).

Further, Exhibit A to Meza's Motion is dated November 11, 2000. Were it necessary for the Court to determine Meza's diligence in discovering the allegedly new evidence, Meza would face a difficult burden.

judgment that the Commissioner's decision was supported by substantial evidence.

The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). In the context of administrative proceedings, due process requires "impartiality on the part of those who function in ... quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). Because a hearing before an ALJ is not an adversary proceeding, "the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

Over a year after the Court granted summary judgment for the Commissioner, Meza raises the new issue of whether ALJ Peter F. Belli's "inactive" bar membership at the time of hearing constitutes a violation of Meza's right to due process. In support of his Motion, Meza first attaches a printout from the California State Bar's web site, indicating that as of November 21, 2000, the ALJ was an "inactive" member of the California State Bar.[4] Second, Meza attaches a copy of a letter from the United States Office of Personnel Management ("OPM"), dated February 11, 1999, stating that "ALJs must be currently authorized to engage in the practice of law." Third, Meza attaches OPM Examination Announcement No. 318, requiring ALJ applicants to update their credentials and maintain their authorization to practice law. Fourth, Meza cites 5 C.F.R. § 930.216(a) as authority for the proposition that ALJ's have an ongoing duty to update documentation of their bar status to the Commissioner.

The Court notes that, although inactive members of the California State Bar "are not entitled to ... practice law," CAL. BUS. & PROF. CODE § 6006 (West 2000), inactive membership is not necessarily a disqualifying status. A lawyer may become an inactive member of the bar either voluntarily or involuntarily. *Id.* § 6006. Lawyers who choose inactive status voluntarily have two fundamental privileges: (1) they may transfer to active status by completing an application and paying the bar membership fee, and (2) they may serve as municipal judges. *Id.* (citing CAL. CONST. ART. V, § 15). Lawyers involuntarily placed on inactive status may become active members only under the procedures defined in CAL. BUS. & PROF. CODE § 6007.

Meza's Motion for Relief does not specify whether the ALJ was voluntarily or involuntarily placed on inactive status. The Court notes, however, that based on the information supplied by Meza, apparently the ALJ voluntarily chose this status. The Court has recently visited the California State Bar's web site, and discovered that the ALJ's membership is now "active."[5] Moreover, according to the definitions used on this web site, the "inactive" label applies only to lawyers who "have chosen this status voluntarily."[6] If the information on the web site is correct, the ALJ voluntarily chose to be an inactive member of the California State Bar, and therefore is entitled to serve as a municipal judge in that state. Under these circumstances, it would be absurd for the Court to hold that a status qualifying a lawyer to serve as a California municipal judge somehow disqualifies the same lawyer from serving as an ALJ for the Commissioner of Social Security.

Even assuming that the ALJ may have been involuntarily placed on inactive status, Meza misapprehends the consequences of the

---

4. Because the November 2000 printout postdates Meza's hearing by more than two-and-a-half years, the printout does not indicate the ALJ's bar status at the time of the hearing. The Commissioner has conceded in another case, however, that the ALJ was an inactive member of the California State Bar in 1997. *See* Response to Post–Hearing Brief at 5, *Garza v. Halter* (No. L–00–CV–13).

5. *See* <http://www.calsb.org/cgi-bin/NT201C?040669> (visited Apr. 18, 2001).

6. *See* <http://www.calsb.org/cgi-bin/NT206C?040669> (visited Apr. 18, 2001) (distinguishing "inactive" members from those who are "not entitled" to practice law as a result of "suspension and involuntary transfer to inactive" status).

federal regulations governing ALJs. 5 C.F.R. § 930.216(a) permits certain persons to be "temporarily reemployed as administrative law judges." 5 C.F.R. § 930.216(a)(1) (2001). To be eligible for this temporary employment, the applicant must meet "current examination requirements set forth in OPM Examination Announcement 318 (including the requirement to maintain a current license to practice law under the laws of a state ....)." *Id.* § 930.216(a)(1)(ii). By its own terms, the above-quoted regulation applies solely to "retired administrative law judges ... known as *senior* administrative law judges." *Id.* § 930.216(a)(2) (emphasis added).

Applicants for "administrative law judge" positions must also satisfy "the qualifying experience requirements in OPM Examination Announcement No. 318." *Id.* § 930.203(b). Because an applicant satisfies these requirements prior to becoming an ALJ, the regulation does not pertain to subsequent time periods. *Id.* Announcement No. 318 does state that "applicants" must update their applications every 21 to 24 months. *See* Motion for Relief, Exh. C, pt. VIII.A. ("Maintaining Eligibility"). This Announcement, however, imposes no such duty on a person once he or she becomes an ALJ. Further, according to related regulations, once an ALJ is hired by an agency, he or she may be suspended, reduced in grade, reduced in pay, or furloughed only for "good cause." 5 C.F.R. § 930.214(a). In light of this framework governing the hiring and retention of ALJs, it would be incongruous for the Court to read into the regulations an additional requirement that an ALJ update the hiring agency regarding his or her bar membership status.

Finally, the letter from OPM's Office of General Counsel also misses the mark. This letter addresses itself to agencies' hiring and retention policies, not to judicial review of agency proceedings. The Court need not address whether OPM or the Commissioner would allow, in the first instance, an ALJ to be an inactive bar member. The Court's very different task is to determine whether Meza's due process rights were violated by the ALJ's inactive bar membership.

In the instant action, Meza does not seriously contend that he has been denied the opportunity to be heard. Nor does he allege bias by the ALJ at the hearing in his case. What remains is Meza's unsupported claim that the ALJ's inactive bar membership renders his recommendation "ultra vires" and categorically invalid. Although the Court believes that the instant facts raise a potential concern regarding the ALJ's capacity, the proper forum for this issue should be an action by the Commissioner pursuant to 5 C.F.R. § 930.214. Adopting Meza's position that an ALJ's inactive bar membership constitutes automatic grounds for judicial reversal would conceivably lead to federal court litigation—and reopening of judgments—whenever an ALJ is delinquent in paying his or her bar membership fee. Such a result understandably lacks support in logic or in case law. The Court therefore holds that no due process violation has occurred, and that no material evidence has been discovered that would warrant rehearing of the Court's Order of April 7, 2000.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Meza's Motion for Relief from Judgment, and his Amended Motion for Relief from Judgment.

IT IS SO ORDERED.